HENRY W. SAGE et al., Respondents, *v.* THE CITY OF BROOKLYN, Appellant.

A law authorizing the taking of a man's land, without the pledge of the faith and credit of the State, or of one of its political divisions, for the payment of the compensation, but remitting the owner for his sole remedy to a fund to be obtained by taxation, according to benefits, of certain specified lands in a limited assessment district, is not a sure and adequate provision, dependent upon "no hazard, casualty or contingency whatever," such as is required to meet the constitutional prohibition against the taking of private property without making compensation.

The courts must so construe a statute as to bring it within the constitutional limitations if it is susceptible of such a construction.

The act of 1868 (Chap. 631, Laws of 1868), widening Sackett street in the city of Brooklyn, provided for a municipal, not a State improvement, and imposed upon the city the ultimate duty of paying the land-owners for the lands taken. (RAPALLO and EARL, JJ., dissenting.)

The provision of the city charter of 1854 (§ 16, tit. 4, chap. 384, Laws of 1854), directing the city comptroller to pay to persons to whom damages have been allowed for lands taken for street improvements, which provision is made applicable to proceedings under said act of 1868 (§ 7), imposes a duty upon the corporate body the city, not by a *descriptio personæ* upon the individual holding that office. (RAPALLO and EARL, JJ., dissenting.)

Where, therefore, lands of plaintiffs were taken for said improvement and an award made to them therefor by the commissioners of estimate and assessment, but the comptroller refused to pay the award, as the assessment made for the improvement was only collected in part, and the amount collected was paid out in payment of claims presented before the presentation of plaintiffs', *held*, that an action was maintainable against

| | |
|---|---|
| 89 | 189 |
| 108 | 51 |
| 89 | 189 |
| 112 | 42 |
| 89 | 189 |
| 121 | 14 |
| 89 | 189 |
| 154 | 406 |
| 154 | 412 |
| 89 | 189 |
| 162 | 51 |
| 89 | 189 |
| 164 | 97 |
| 89 | 189 |
| 169 ¹ | 81 |

the city to recover the sum awarded. (RAPALLO and EARL, JJ., dissenting.)

Also *held*, that the exemption clause in the act of 1862 (§ 39,' chap. 63, Laws of 1862) was not applicable. (RAPALLO and EARL, JJ., dissenting.)

(Argued November 29, 1881; decided May 30, 1882.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made July 8, 1880, which affirmed a judgment, in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought to recover the amount of an award made to plaintiffs for an interest in lands taken for the widening of Sackett street, in the city of Brooklyn.

The material facts are stated in the opinion.

*William C. De Witt* for appellant. The title of the easement of way, known as the Sackett street boulevard, is not in the city of Brooklyn, but was acquired by the people of the State of New York by virtue of a special act of the legislature, through a special commission acting in their behalf, and for whose acts, either of nonfeasance or misfeasance, the city of Brooklyn is in no way responsible. (*Maximillian* v. *The Mayor*, 62 N. Y. 160; *Russell* v. *The Mayor*, 2 Den. 464–5, 473, 481–2–3; *New York and Brooklyn Saw-mill & L. Co.* v. *The City of Brooklyn*, 71 N. Y. 580; *Martin* v. *Brooklyn*, 1 Hill, 545, 550–1; *King* v. *The City of Brooklyn*, 42 Barb. 627; *Lorrillard* v. *Town of Monroe*, 11 N. Y. 392; Laws of 1860, chap. 488, §§ 16, 17, 1–2; Laws of 1868, chap. 821; Laws of 1869, chap. 861; Laws of 1871, chap. 926; Laws of 1872, chap. 493; Laws of 1874, chaps. 572, 583; Laws of 1875, chap. 489; Laws of 1881, chap. 519; *Astor* v. *Mayor, etc.*, 62 N. Y. 567; *People, ex rel.* v. *McDonald*, 69 id. 362; *Maximillian* v. *Mayor*, 62 id. 164, 165, 168; *King* v. *Brooklyn*, 42 Barb. 627; *People, ex rel. Nicholson Pavement Co.,* v. *Kalbfleisch*, MSS., Gen. Term, 2d Dept., 1868; *Riley* v. *Brooklyn*, Sup. Ct. Kings Co. Circuit, 187; Constitution, art. 1, § 11; *Wendell* v. *People*, 8 Wend.

183, 189; *Gould* v. *H. R. R. Co.*, 6 N. Y. 522; *Cornell* v. *Butternut Turnpike Co.*, 25 Wend. 365, 367–8; *People* v. *Kerr*, 27 N. Y. 188, 198; *Matter of John and Cherry Sts.*, 19 Wend. 676–7; *Embury* v. *Arnott*, 3 N. Y. 517; *Matter of Albany St.*, 11 Wend. 149; *Matter of Ninth Ave.*, 45 N. Y. 729; Laws of 1868, chap. 631, § 11, p. 329.) So far as the comptroller, or tax collector, or registrar of arrears acted, or failed to act, in this proceeding, under the said act of the legislature, they acted, or failed to act, as State agents and officers, for whose conduct the city is not liable in its corporate capacity. (Laws of 1873, chap. 363, title 19, § 27; *Gray* v. *City of Brooklyn*, 2 Abb. Ct. of App. Reps. 269; Laws of 1881, chap. 443, p. 602; chap. 154, p. 685.) The comptroller was not guilty of negligence. (*Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9; *Baker* v. *Johnson*, 2 Hill, 342; *People* v. *Hayden*, 6 id. 359; *Rexford* v. *Knight*, 11 N. Y. 313–14.) The tax collector was not guilty of negligence. (Charter of 1873, chap. 863, title 8, § 3; title 2, § 18.) The order of the Supreme Court, confirming the report of the commissioners of awards and assessments, is a final judgment respecting the validity of their proceedings, and cannot be called in question in this action. (*Dolan* v. *Mayor*, 62 N. Y. 472; *Matter of Arnold*, 60 id. 26; *Methodist Church* v. *New York*, 55 How. Pr. 57; *Morewood* v. *New York*, 6 id. 386.) The act of 1868, so far as it relates to the Sackett street boulevard, or the subject-matter of the present action, is constitutional. (*Matter of Sackett, Douglass and Degraw Sts.*, 74 N. Y. 95; *People* v. *Mayor of Brooklyn*, 4 id. 430.)

*Joshua M. Van Cott* for respondents. The statutes under which the respondents' land was condemned and taken, impose upon the taker the duty to make just compensation and to make it with diligence and reasonable promptness. (*People* v. *Hayden*, 6 Hill, 359; *Chapman* v. *Gates*, 54 N. Y. 144. *People* v. *City of Syracuse*, 78 id. 56; *Brooklyn Park Comm'rs* v. *Armstrong*, 45 id. 244.) For its neglect and failure the city is liable in damages, and the measure of dam-

ages is the amount of the awards, with interest. (*Adsit* v. *Brady*, 4 Hill, 630; *Hover* v. *Barkhoof*, 44 N. Y. 113; *People* v. *Supervisors of Otsego*, 51 id. 401 ; *People* v. *Supervisors of Livingston*, 68 id. 114; *Brewster* v. *City of Syracuse*, 19 id. 116; *Town of Guilford* v. *Supervisors of Chenango*, 13 id. 143 ; *McCullough* v. *City of Brooklyn*, 23 Wend. 458, 460–1 ; *Beard* v. *City of Brooklyn*, 31 Barb. 142; *Cummings* v. *Brooklyn*, 11 Paige, 569 ; *Baldwin* v. *City of Oswego*, 2 Keyes, 132; *Ganson* v. *City of Buffalo*, 1 id. 454 ; *Clark* v. *Miller*, 54 N. Y. 528; *Marsh* v. *Town of Little Valley*, 64 id. 112 ; *Sibley* v. *City of Mobile*, 4 Am. L. T. Rep. [N. S.] 226 ; *United States* v. *Clark County*, 5 Reporter, 131 ; *Paulding* v. *Cooper*, 10 Hun, 20 ; *S. C.*, 74 N. Y. 619.) The acts under which the respondents' land was taken for public use are not open to the objection that they do not suitably provide for the payment of a just compensation, as prescribed by the Constitution. (Albany Act, 1801 ; 2 Laws, 153; 6 Johns. 1 ; 7 id. 541 ; New York Act, 2 Rev. Laws of 1813, 408; Brooklyn Act; chap. 384, Laws of 1854; Laws of 1868 ; Washington Park Act, Laws of 1847, chap. 142, § 6; *Matter of Washington Park*, 1 Sandf. Sup. Ct. 283 ; Brooklyn Park Act, §§ 5–10–13, chap. 340, Laws of 1861; New York Park and Street Act, §§ 1, 4, chap. 565, Laws of 1865 ; *Matter of Deering*, 85 N. Y. 1 ; Laws of 1870, chap. 623 ; *People* v. *McDonald*, 69 N. Y. 362; *Matter of Sackett Street*, 74 id. 96 ; Shepherd's Touch. 80 ; Co. Litt. 42a ; 52 N. Y. 18.) Every possible intendment must be allowed in favor of their validity. (*Embury* v. *Connor*, 3 N. Y. 511; *Ryder* v. *Stryker*, 63 id. 136, 139, 140 ; *Talbot* v. *Hudson*, 16 Gray, 417, 422 ; *Wellington, Petitioner*, 16 Pick. 96.) It is in the legislative discretion to provide what public improvements shall be made, and whether their cost shall be a State or local charge. (*Lorillard* v. *The Town of Monroe*, 11 N. Y. 392 ; *People* v. *Town Auditors*, 74 id. 310 ; *Phelps* v. *Hawley*, 52 id. 23 ; *Ensign* v. *Superv'rs of Livingston*, 25 Hun, 20 ; *People* v *Superv'rs of Livingston*, 68 N. Y. 114; *Coster* v. *Albany*, 43 id. 399.) Incorporated municipal governments have a corpo-

rate *status* essentially different from towns and counties, and, in consideration of their franchises, they bind themselves by an implied contract with the State to perform duties and fulfill obligations which result from accepting and acting under the powers delegated to them, and in respect of which actionable remedies result to individuals for a breach of such duties and obligations. (*Conrad* v. *Trustees of Ithaca*, 16 N. Y. 158; *Hogan* v. *The Mayor*, 68 id. 17; *Matter of Zoborowski*, id. 88; *Matter of Deering*, 85 id. 399; *Coster* v. *City of Albany*, 43 id. 399; *People* v. *Kelly*, 76 id. 440, 487, 490; *Matter of Sackett St.*, 74 id. 95, 100, 101.) The city is liable for having been grossly negligent and derelict, in its failure to use its powers to collect assessments and pay the awards. (*Bronson* v. *Kinzie*, 1 How. [U. S.] 311; *McCracken* v. *Hayward*, 2 id. 608; *Grantley's Lessee* v. *Erving*, 3 id. 707; *Curran* v. *Arkansas*, 15 id. 304; *Hawthorne* v. *Calef*, 2 Wall. 10; *Green* v. *Biddle*, 8 Wheat. 1; *Dikeman* v. *Dikeman*, 11 Paige, 484; *Brooklyn Park Comm'rs* v. *Armstrong*, 45 N. Y. 234; *Quin* v. *Buffalo*, 13 Weekly Dig. 526; *Moore* v. *The Mayor*, 73 N. Y. 239.) It is liable on the further ground, that it received the bulk of the assessment fund, and was charged with a trustee's duty to pay it equally to the beneficiaries of the fund, and committed a *devastavit* in paying the whole of it to others to the exclusion of the respondents. (*Swift* v. *The Mayor*, 83 N. Y. 536, '7; *People, ex rel. Dannat*, v. *Comptroller*, 77 id. 45, 50; *Risley* v. *Smith*, 64 id. 576; *Kingsley* v. *Brooklyn*, 78 id. 200.) The exemption clause in the acts of 1862 (Laws of 1862, § 39, pp. 203, '4) and 1873 (Laws of 1873, title 19, § 27), does not exempt the city from liabilities resting upon the corporation for money received into its treasury, and which has been misapplied. (*Kingsley* v. *Brooklyn*, 78 N. Y. 200; *Gray* v. *Brooklyn*, 2 Abb. App. Dec. 267.)

ANDREWS, Ch. J. The legislature by chapter 631, Laws of 1868, widened Sackett street in the city of Brooklyn, to the width of two hundred and ten feet. The commissioners of

Prospect Park were directed by the act to take proceedings within sixty days after its passage, to open, grade and otherwise improve the street, and for the purpose of determining the amount to be paid to the land-owners for the lands required for the improvement, to apply to the court upon notice to be personally served on the counsel of the city, and to be also published for ten days in the corporation newspaper, for the appointment of commissioners to estimate the expense of the improvement and the damages of the land-owners, and to apportion and assess the same upon the property benefited within the district of assessment to be fixed by the park commissioners. (§§ 4, 5, 10.) The commissioners of estimate and assessment awarded to the plaintiffs for their lands within the limits of the widened street the sum of $7,125, and the award was duly confirmed February 28, 1870. The improvement was completed in 1873, and the street so widened and improved, forming a broad avenue bordering on Prospect Park, has since that year been open to public use.

The plaintiffs have never been paid their award. The aggregate amount of awards made for lands taken for the improvement was $334,000, which was assessed upon the lands within the assessment district. The sum of about $280,000 was collected and paid into the city treasury, and was paid out by the comptroller as claims were presented until the fund was exhausted. The balance of the assessment has not been collected. The lands assessed on which the assessments are unpaid, have been offered for sale by the city, but by reason of the accumulations of assessments thereon beyond their value, there were no bidders, and this resource for the payment of awards is practically valueless. The plaintiffs presented their claim to the comptroller of the city for payment, but payment was refused on the ground that the amount collected had been paid out to claimants who had presented their claims before the presentation of the claim of the plaintiffs. This action was subsequently brought to recover the award, as a debt owing by the defendant. The city denies its liability, and asserts that it owes no duty to pay the plaintiffs for their lands; that the

widening of Sackett street was a State, and not a municipal improvement, and that the only special relation which the city sustained to the award, grew out of the fact that the State for its convenience availed itself of certain existing municipal agencies to collect and pay over the assessments to the parties entitled to payment.

This contention, if well founded, substantially deprives the plaintiffs of any remedy. It is not claimed that the State assumed any liability under the act of 1868. The act charged the expense of the improvement upon a limited assessment district, and it turns out that the property therein is inadequate, or cannot be sold to pay the assessments in full. If no immediate or ultimate duty is imposed on the city to pay the awards, or make good any deficiencies in the assessment fund, then we repeat the plaintiffs are without remedy to recover their award. The position of the city, if sustained, leads to the inevitable conclusion that the lands of the plaintiffs were never lawfully taken for the improvement, that their title has never been divested, and that they may now enter upon and reclaim the exclusive possession of the lands of which they have been deprived.

It is so axiomatic, that it is laid up as one of the principles of government, that a provision for compensation is an indispensable attendant upon the due and constitutional exercise of the power of depriving an individual of his property under the right of eminent domain. (*Gardner* v. *Village of Newburgh*, 2 Johns. Ch. 168.) The courts in construing the constitutional guaranty, have departed from what may seem its plain and natural meaning, and have held that the payment for property taken *in invitum* for public use, need not be concurrent with the taking, but that it is sufficient if the law authorizing the taking, also provides a sure, sufficient and convenient remedy by which the owner can subsequently coerce payment by legal proceedings. If such provision is not made, then, as was said by Nelson, Ch. J., " the law making the appropriation is no better than blank paper." (*People ex rel. Utley* v. *Hayden*, 6 Hill, 359.) It is, I think, a plain proposition, that a law authorizing the

taking of a man's land, and remitting him for his sole remedy
for compensation to a fund to be obtained by taxation of cer
tain specified lands in a limited district, according to benefits
is not a sure and adequate provision, dependent upon no "haz
ard, casualty or contingency whatever," such as law and justice
require to meet the constitutional requirement. The pledge
of the faith and credit of the State, or of one of its political
divisions, for the payment of the property owner, accompanied
with practical and available provisions for securing the appli
cation of the public faith and credit to the discharge of the
constitutional obligation of payment, has been held to be a
certain and sufficient remedy within the law. But a remedy
for compensation, contingent upon the realization of a fund
from taxation for benefits within a limited assessment district
does not meet the constitutional requirement. The inadequacy
of such a provision finds in the circumstances of this case ample
illustration. (See *Chapman* v. *Gates*, 54 N. Y. 146.)

In coming to the inquiry whether the city of Brooklyn is
charged with the duty of paying the awards for the open
ing of Sackett street, we are to bear in mind that all acts of
the legislature are judicially construed to be within constitu
tional limitation if susceptible of a construction which would
make them so, and that "the court, if possible, must give a
statute such a construction as will enable it to have effect."
(Cooley's Const. Lim. 184.) This is but a corollary from the
principle asserted by Mr. Justice WASHINGTON in *Ogden* v
*Saunders* (12 Wheat. 270), and frequently repeated in subse
quent cases, that "it is but decent respect due to the wisdom
the integrity and the patriotism of the legislative body, by
which any law is passed, to presume in favor of its validity
until its violation of the Constitution is proved beyond al
reasonable doubt." The legislature, in passing the act for the
opening of Sackett street, intended to make a valid and effect
ive law, and we may reasonably expect to find provision
therein which shall make it accord with the Constitution.

The claim that the opening and widening of Sackett street is
a State, as distinguished from a municipal improvement, is op

posed to the inferences flowing from the nature and object of the improvement, its connection with the system of parks in Brooklyn (of which it is an adjunct) and from the provisions of the act itself. The State, it is true, took the lands required for the widening of Sackett street by direct legislative enactment (§ 1). It also committed to the park commissioners the initiation of the proceedings for opening the street, investing them, for that purpose, with the powers which, under the general law relating to street openings in Brooklyn, are conferred upon the common council (§§ 4, 5). The act also placed the street, when opened, under the exclusive control and management of the park commissioners (§ 11). But these provisions are not inconsistent with the theory that the opening of Sackett street was a city improvement. The same features are found in the Prospect Park Act of April 17, 1860. The legislature, in that act, declared certain designated lands "to be a public place to be known as Prospect Park" (§ 1); the park was placed under the exclusive control and management of the park commissioners (§§ 16, 18), and by the third section it is declared that the lands "shall be deemed to have been taken by said city of Brooklyn for public use." By other provisions the city was to be vested with the fee of the lands taken, upon payment being made therefor. A municipal corporation is the creature of the State, deriving its public faculties and political powers from the legislature. The legislature may, in place of remitting the question to the discretion of the city authorities, prescribe what local improvements shall be made, and create special agencies for their execution. It is not required to commit their execution to the ordinary representatives of the municipal body; and it may charge the expense of such improvements upon the locality. It does not, therefore, go far toward establishing the claim that a street improvement within a city is a State and not a municipal work, to show that it was directed by the legislature, and that its execution was committed to special agents appointed by the legislative act. In the case of Sackett street, the improvement was not one in which the State at large was specially interested, nor did the State assume

the burden of the expense. The people at large were interested in the same sense and no other, that they are interested in the opening of every highway within the State. But the improvement was peculiarly for the local convenience and advantage of the city of Brooklyn. When the act of 1868 was passed, Sackett street was designated on the commissioners' map of the city as one of the city streets. The improvement to be made was limited territorially to the city. The unusual width of the proposed avenue was fixed, as may be inferred, not because the accommodation of public travel required so wide a street, but because it was supposed that a wide avenue, set with trees and otherwise improved, would enhance the beauty and attractiveness of the city, and promote the pleasure and comfort of its citizens. The improvement was, as we have said, a part of the park system, and it was with great propriety placed under the control of the park commissioners. That the improvement of Sackett street was regarded by the legislature as a city and not a State improvement also plainly appears from the supplementary act, chapter 592, Laws of 1873. The park commissioners were by that act authorized and directed to improve Sackett street by grading, paving, planting shade trees, constructing carriage-ways, etc., and, by the fourth section, the city was required to issue its bonds for the purpose of raising money to pay the expense of the improvement, and the money collected on assessments was directed to be paid to the commissioners of the sinking fund, for the redemption of the bonds. We think then there can be no doubt that the widening and improvement of Sackett street was a local, municipal improvement, as completely as if it had been primarily undertaken by the city under the general powers conferred by the charter.

It remains to consider whether the statute of 1868 imposed upon the city the primary or ultimate duty of paying the landowners for the land taken for the street; for we think it must be admitted upon the doctrine of *McCullough* v. *The Mayor, etc.* (23 Wend. 458), that unless the statute imposes the duty it cannot be implied from the mere fact of the taking of the

land for a city street. The authority to take, and the duty of the corporation to pay for the land taken, depend upon positive law. The authority to take will be ineffectual unless accompanied with proper provisions for payment, but the duty of the corporation to pay the land-owners must be found in the affirmative prescriptions or reasonable intendments of the statute. But we think the obligation of payment was imposed on the city. The seventh section of the act of 1868 makes all laws in force relative to the widening, opening and improving streets in the city of Brooklyn (with certain exceptions not here material), applicable to proceedings under the act. By the charter of 1854 (Chap. 384), in force when the act of 1868 was passed, power was conferred on the common council to open and widen streets within the city, upon petition, etc. The *fourth* title relates to assessments for local improvements, and provides for ascertaining and awarding the damages of land-owners for land taken for streets. The sixteenth section is as follows : " The city comptroller shall pay to the persons (or to the attorneys or legal representatives of such persons) to whom damages may have been allowed in such report the amount of such damages, without any deduction therefrom by way of fee or commissions." This section was plainly incorporated into the Sackett Street Act by the seventh section referred to. If this could be successfully controverted, the result would be that there is in the Sackett Street Act, no direction whatever for the payment of the land-owners, and their right to payment (under the act) if it existed at all, is left to inference from the provision for an assessment of damages awarded for lands taken. The direction in section 16, that the comptroller shall pay the land damages, is absolute and unqualified. It is not a direction to pay them out of the assessments when collected or out of a particular fund. It is doubtless true that the act of 1868 was a local improvement act, and in accordance with the general theory of such acts, the expense of the improvement was made a local and not a general charge. But it is not inconsistent with this theory that the municipality may be required to pay the cost of the improvement in anticipation

of the collection of assessments therefor. This is precisely what was done under the supplementary act of 1873, to which we have referred, in respect to the expense of grading, regulating, etc. The city, under that statute, was required primarily to advance the necessary funds. The provision in the act of 1873 furnishes a strong inference, in favor of the claim that the legislature by incorporating section 16 of the charter into the act of 1868, intended to impose upon the city the duty, either primary or ultimate, of paying the land-owners. The acts of 1868 and 1873 are *in pari materia*, and it would be an anomaly which it cannot be reasonably supposed the legislature intended, that the city should be bound to pay for paving and regulating the street, and be under no obligation to pay for the land taken therefor. There are doubtless some difficulties in the construction we have given to the act of 1868, but none we think which cannot be resolved, and courts are bound to go to the very verge of construction to sustain the constitutionality of statutes.

It is clear, we think, that the duty imposed by section 16, is a duty imposed upon the corporate body — the city, and not, by a *descriptio personæ*, upon the individual who may happen to be comptroller. The comptroller could not as an individual execute the directions given. He is, by the charter, the chief financial officer of the city. But he neither receives nor has the custody of money received from local assessments. The charter requires that the collector shall pay the money collected thereon to the city treasurer, who is required to deposit it to the credit of the city in such banks as the common council may direct. (Laws of 1854, chap. 384, title 3, § 15, title 5, §§ 11, 15.) And it prohibits any money being drawn from or paid out of the treasury, except in pursuance of orders of the common council appropriating the same, and upon warrants signed by the mayor and countersigned by the treasurer and city clerk. (Title 3, § 15.) According to common understanding, a direction to the chief financial officer of a city, State, or of the general government, to pay money for a public purpose, is a direction that the State, government or

municipality pay the sum stated. This is especially so in a case like this, where the direction is found in a charter act, and relates to a duty of a public character. (*N. Y., etc., Lumber Co. v. Brooklyn,* 71 N. Y. 580.)

We have been referred to title 18, section 6, of the charter of 1873, as indicating a legislative policy to exempt the city of Brooklyn from any liability for land taken for streets. If that clause has the construction placed upon it by the counsel for the respondent, the validity of the charter in respect to acquiring lands for streets, may well be doubted. If, however, it is construed as relating simply to the expense of regulating streets, to which it was confined in the original act from which it was taken (Chap. 213, Laws of 1859), or is intended only to declare the general principle that the expense of street openings shall be a local and not a general charge, it is not subject to criticism. But however this may be, that clause does not govern the rights of the parties in this case which are regulated by prior statutes, and were fixed before the charter of 1873 was framed.

The exemption clause in the act of 1862, (Chap. 63, § 39), is not a defense. The duty of payment imposed by the act of 1868, is a corporate duty, and one from which the city can be relieved only by performance. It is not a duty imposed upon the common council or any officer of the city, and the case is not within the purview of the act of 1862. We think the liability of the defendant was properly adjudged in the courts below, and it is a satisfaction that this conclusion, warranted as we think it is by the rules of law, accords with equity and justice.

The judgment should be affirmed.

Earl, J., (dissenting.) The plaintiffs sued and recovered for an award made to them for land taken to widen Sackett street under the act chapter 631 of the Laws of 1868, and the sole question for our determination upon this appeal is, whether the city became responsible upon the facts proved for that award. Section 1 of the act, by its own terms, *ex proprio vigore*, widened Sackett street and appropriated the land needed therefor.

Section 4 directs the commissioners of Prospect Park to take the proceedings for widening that street and making the other improvements mentioned in the first and second sections of the act; and for the purpose of determining the amount to be paid to the owners of the lands and tenements taken for the purpose of the several changes and improvements contemplated by the act, they were required to make application to the Supreme Court in the second judicial district at a Special Term thereof, upon notice to be served upon the counsel of the city and to be published in the corporation newspapers, for the appointment of three commissioners to estimate the expense of such widening and opening, and the amount of damages to be sustained by the owners of the land, and by other persons to be affected thereby, and to apportion and assess the same as directed; and the court was required upon such application to make such appointment. By section 6 the commissioners so to be appointed were required to proceed to estimate such expense and damage, and to make their report thereon to the court, and after confirmation of such report, they were required to apportion and assess the amount thereof, in such manner as they should deem just and equitable, upon the lands and premises in their judgment benefited by the improvement within the district of assessment to be designated by the park commissioners as provided in the act. The commissioners thus appointed, in February, 1870, awarded to the plaintiffs the sum of $7,125, and for the purpose of raising money to pay such award and other awards made to land-owners, they laid an assessment upon lands benefited to the amount of nearly $350,000, about $13,000 of which was laid upon lands of the plaintiffs and paid by them. All the assessments thus laid, excepting about $50,000, were voluntarily paid or collected and placed subject to the control of the comptroller of the city, and the moneys thus realized were paid upon warrants drawn by him in satisfaction of awards in the order of their presentation, leaving no money to apply upon the award made to the plaintiffs.

Under the provisions of the act of 1868, the assessments were required to be collected under the general laws relative to the

collection of assessments applicable to the city of Brooklyn. The assessments upon the lands along the line of the improvements were so great, that although they were advertised and offered for sale on many different occasions in the years 1871 and 1872, no bids could be obtained, and the balance of the assessments was thus not collected. In the courts below the plaintiffs' claim was sustained upon some one or more of these grounds. *First*, that the city had taken their lands and having had a reasonable time to pay them therefor, and having failed to do so, was liable as a corporation for the amount awarded them. *Second*, that the comptroller was guilty of misfeasance in paying the awards, as he did, in the order of presentation and not *pro rata* from the money collected, and that the city was therefore bound to make good plaintiffs' claim. *Third*, that there was negligence on the part of the tax collector in respect to the collection of the assessments, in consequence of which the plaintiffs have been deprived of their compensation.

There is nothing in the act of 1868 imposing any duty or conferring any authority upon the city in reference to the improvement of Sackett street. Even after the improvement was made under the direction of the park commissioners, the city was to have no control over Sackett street, section 11 providing as follows : " After Sackett street shall have been opened, so much thereof as lies eastward from Prospect Park shall be under the exclusive control and management of the said park commissioners, and they shall make and enforce proper rules and regulations for the public use thereof, and after it shall have been improved, as hereinbefore directed, its subsequent maintenance shall be provided for in the same manner as the public parks now under the charge of the said park commissioners are provided for."

The land taken for the widening of Sackett street was not transferred to the city. The fee remained in the original owners and an easement even was not vested in the city, but in the people of the State. It is impossible to perceive upon what theory it can be held that the city took the land, as it acquired no interest therein. It was taken and appropriated by the di-

rect act of the legislature, and by the same act the park commissioners were appointed to enter upon the land and make the improvement. They were not the agents of the city, but State agents. They were not officers of the city, and, in what they did, they did not represent the city, and had no authority in any way to bind it, and could in no way make it responsible for these awards. They had the precise authority conferred upon them by the act and no other, and the liability of the city for their acts or for the land taken, or the awards made is not so much as hinted at by the act.

For the position that the park commissioners were not agents of the city for whose acts the city could be made responsible, the cases of *Maxmilian* v. *The Mayor* (62 N. Y. 160), *Tone* v. *The Mayor* (70 id. 157), and *New York & Brooklyn Saw-Mill & Lumber Co.* v. *The City of Brooklyn* (71 id. 580) are abundant authority. The general rule as deduced from these cases is that a municipality is not liable for the acts or omissions of an officer in respect to a duty specifically imposed upon him, which is not connected with his duties as agent of the corporation, and that such a corporation is only liable for the acts or omissions of officers in the performance of duties imposed upon the principal.

If the statute had imposed an absolute duty upon the city to pay the awards to be made under the act, there would have been foundation for the maintenance of the action; but without some such provision we think there are no principles and certainly no authority sanctioning this recovery. In *McCullough* v. *The Mayor* (23 Wend. 458), the action was to recover money awarded to the plaintiff for land taken for opening a street, and it was held the plaintiff could not recover, because by the statute authorizing the street improvement the award was not declared to be a debt against the city, and because the statute did not make it the duty of the city to pay the money. That was a case where the street was opened by the city, and the statute under which the proceeding was taken required that when an order was made which required the corporation of the city of Brooklyn to lay out or open any new street, or widen or extend

an old one, commissioners should be appointed to estimate and assess the amount of damages and benefits to be sustained and derived by the owners of lands and buildings affected by the improvement. The commissioners were required to make a report, and after the report was confirmed, the persons assessed for benefits were authorized to pay the money to the city treasurer, and if not paid within the time specified, the assessments were to be collected on the warrant of the corporation by the city collector, who was authorized to levy upon goods and chattels of the persons assessed, and the money when collected was to be paid to the treasurer, and the treasurer was required to pay the money over to the persons to whom awards for damages had been made. If the collector could not find any goods or chattels to satisfy the assessments he was to certify the fact to the common council, upon which they were authorized to proceed and sell the lands. In that case BRONSON, J., said : " In such a case I am unable to see that any other duty or obligation rests on the corporation than that of putting the necessary machinery in motion according to the requirements of the statute. If the common council neglected that duty or has been wanting in diligence, an action on the case would perhaps lie in favor of any one who like the plaintiff would be entitled to the money when collected ; but a *mandamus* would be a more appropriate remedy." In *Stafford* v. *The Mayor of Albany* (6 Johns. 1, and 7 id. 541), an action of *assumpsit* for the recovery of money awarded for land taken for street purposes by the city of Albany was sustained upon the express ground that the benefits of the improvements were not charged upon individuals, and that there was an express provision that the damages should be paid by the corporation. Speaking of these cases Judge BRONSON, in *McCullough* v. *The Mayor of Brooklyn*, further said : " There was a duty on the part of the corporation to pay the money, and the decision was put upon that ground. So in New York, although the burden is ultimately to fall upon the persons benefited, the damages awarded are, for a limited time, to be paid by the corporation. (2 R. L. 418, § 183.) The legislature has not imposed any such burden upon the corporation of Brooklyn, and this action cannot be maintained."

In the act now under consideration the land for the street improvement was not only not taken by the city, but the act contains no provision making it the duty of the city to pay the awards for such lands out of its treasury. The act made particular provision as to how the awards were to be paid, and resort can be had to that provision only for payment.

In *Cumming* v. *The Mayor etc. of Brooklyn* (11 Paige, 596), the corporation of the city of Brooklyn contracted with the complainants to grade and regulate one of the avenues of that city at a specified price, to be paid for out of the moneys which were to be collected by an assessment to be made for such improvement, and it was held that an action could not be maintained for the recovery of the amount due upon the contract, but that an action could be maintained because the city had not caused a proper assessment to be made, and the money thus collected. That was a case where the improvement made was a city improvement, and the city had legally bound itself by contract, and it was made liable for a breach of its contract.

In *King* v. *The City of Brooklyn* (42 Barb. 627), the legislature, by an act passed April 17, 1861, provided for the widening of Fourth avenue in the city of Brooklyn, and appointed a board of commissioners with power to open and work the same, and until the work was completed all control over the avenue was taken from the common council and given to the commissioners. The city was directed to issue its bonds to a certain amount and to pay the money realized therefrom to the city treasurer, and the same was to be kept separate and paid out upon the order of the commissioners only, and to be used for no other purpose. The act did not provide that the corporation of the city of Brooklyn should accept of or assent to it. The commissioners named in the act contracted in their own names with K. and B. for certain work to be done upon the avenue by K. and B., at stipulated prices, which work was performed by the latter. In 1862 the legislature enacted a new charter for the city of Brooklyn, by which there was created a board of contracts, which board only could bind the city by contract, except in

certain specified cases, and it was held : *First.* That the ave-
nue commissioners were not, by operation of law, the agents of
the city. *Second.* That if the city was liable to K. and B.
upon the contract, it was liable to pay as directed by the stat-
ute, from the fund and in the precise manner therein prescribed,
solely by force of the legislative power of taxation. *Third.*
That the fund raised under the act of 1861 was the only fund
with reference to which K. and B. contracted with the com-
missioners; that they could be paid in no other way than un-
der and by virtue of that act. *Fourth.* That the new charter of
Brooklyn did not repeal the act of 1861 appointing the Fourth
avenue commissioners. *Fifth.* That an action would not lie
against the city by K. and B. upon the contract, until the fund
should have been raised by the sale of the city bonds and the
proceeds paid to the city treasurer, and the avenue commission-
ers had given their order on the treasurer in favor of K.
and B. *Sixth.* That K. and B. must produce the order from
the commissioners, and if the order was unjustly refused the
remedy was by *mandamus.*

Even if this street widening was a street improvement inau-
gurated and carried on by the city, for which it was bound
to provide payment, it could not be sued and compelled to pay
out of its general funds, unless it was chargeable with fault
and negligence in not collecting the assessments imposed to
raise money to pay the awards. (*Hunt* v. *The City of Utica,*
18 N. Y. 442; *Baker* v. *The City of Utica,* 19 id. 326;
*Baldwin* v. *The City of Oswego,* 1 Abb. Ct. App. 62.) In
the latter case it was held that a contractor employed for the
making of a local improvement, the expense of which, under
the charter, was to be assessed, not upon the city at large
but only on the property benefited, cannot maintain an action
for his compensation against the municipal corporation directly
on the contract to recover a judgment which shall be a charge
upon the general resources of the city. It was, however, held
that if the common council, or officers of the city having power
to raise the necessary funds by assessment, neglected to do so,
the action would lie upon the ground of negligence.

In *Ganson* v. *The City of Buffalo* (2 Abb. Ct. App. 242), it was held that, where the charter of a city requires the common council to make a compensation in money within a fixed time, for land taken for a local improvement, and makes such compensation a general debt or charge upon the city, an action lies against the city therefor after the time limited has expired, although the city has not collected the amount from the parties assessed; and that decision was based upon the circumstance that the city charter made it the absolute duty of the city to pay the compensation. It was also held in that case that the remedy of the plaintiff would have been by *mandamus* if the charter had provided that the compensation due him should be paid out of the assessments. In *Swift* v. *Mayor, etc., of New York* (83 N. Y. 528), it was held that where a particular mode of discharging the obligations of a municipal corporation is provided by law, that mode must be pursued; and that it is only when the corporation is put in default in omitting to discharge some duty imposed upon it by statute, after the proper steps have been taken, that an action will lie against it, unless it has, by some act of its own outside of the original indebtedness rendered itself liable; and the observations and reasoning of RAPALLO, J., writing the opinion of the court in that case, are in a great degree pertinent to this case.

We have now gone far enough to deduce the following conclusions:

*First.* That an action of *assumpsit* for this award could not be maintained against the city for the reason that there is nothing from which such an *assumpsit* could be implied and there is nothing in the statute obligating the city to pay the award or making it a debt upon the city. Plaintiffs' land for the widening of the street was taken by the direct *fiat* of the legislature, and the legislature appointed agents, not of the city, but of the State, to enter upon the lands and make the improvements. In such a case there can be no obligation of the city to pay, except the obligation be found in the statute itself. But for the constitutional inhibition land could be taken for

public use without compensation: hence there is no implied obligation to make compensation for land thus taken.   The obligation must be created by the law taking the land or authorizing it to be taken, and the mode of discharging it and ascertaining its extent must there be found.   *Second.*  The plaintiffs' remedy is undoubtedly by *mandamus* to compel the proper officers designated in the statute to collect the assessments for benefits by the sale of the lands assessed and thus produce the money to pay the award.   It does not appear that any thing stands in the way of such a remedy.   It was not the design of the statute that the expenses of the improvement inaugurated thereby should be a general charge upon the city ; but the intention plainly expressed is that they should be a charge upon the lands benefited, and effect can be given to that intention in no other way than by *mandamus* to compel the collection of the assessments.

But it is further contended on behalf of the plaintiffs that the city is liable because the comptroller did not pay the money realized from the assessments *pro rata* upon all the awards. The answer to this is, that the comptroller, in what he did, did not act as the agent of the city, but as the agent of the State in accomplishing the improvement.   The money, when collected, did not belong to the city or form a portion of its funds.   It was a special fund to be especially appropriated by the comptroller as required in the law.  (*Lorillard* v. *The Town of Monroe*, 1 Kern. 392.)   If the comptroller misappropriated the money or neglected to pay the plaintiffs their share of it, their remedy was against him either by *mandamus* or an action against him adapted to the nature of the case.

It is further contended that the city is liable because the tax officers specified in the statute have not sold the lands assessed, and thus collected $50,000 of the assessments remaining unpaid.   The answer again is that such officers were not the agents of the city, and the city is not responsible in any way for their misfeasance or nonfeasance in this matter.   They were appointed to act as agents of the State for the collection of assessments, not to pay a debt of the city, but to pay for the

land taken by the State. If they have not done their duty they can be compelled to act by *mandamus*, or can be sued for their nonfeasance or misfeasance. A further answer to the contention that the city should be made liable on account of the negligence of the tax officers in not enforcing collection of the assessments is that there is no finding and no proof showing any damage to the plaintiffs on account of such negligence or omission of alleged duty on the part of the tax officers; that is, it does not appear that the assessments could have been collected in any way or by any means. It does not appear that the lands could have been sold so as to realize the amount necessary to pay the plaintiffs, and hence it does not appear that the plaintiffs were damaged by the neglect or omission alleged. On the contrary, it does appear quite clearly that the lands could not have been sold for enough to have paid the expense of the sale ; that repeated offers of sale were made at great expense to the city, and no bids could be obtained for the land. Before the city could be made liable on the ground of its negligence to collect these assessments it was requisite that it should appear, and be found that but for such negligence the assessments could have been collected, and that thus the plaintiffs suffered damages from the negligence.

But there is a further answer to the contention that the city should be held liable for the misfeasance or nonfeasance of either the comptroller or the tax officers even upon the assumption that they were charged with duties as agents or officers of the city. It was provided in the city charter (Chap. 63, § 39, Laws of 1862 ; chap. 863, title 19, § 27, Laws of 1873) as follows: "The city of Brooklyn shall not be liable in damages for any misfeasance or nonfeasance of the common council, or any officer of the city or appointee of the common council of any duty imposed upon them, or any or either of them, by the provisions of this act, or of any other duty enjoined upon them, or any or either of them as officers of the government by any provision of this act, but the remedy of the party or parties aggrieved for any such misfeasance or nonfeasance shall be by *mandamus* or other proceedings, or action to

compel the performance of the duty, or by other action against
the members of the common council, officer or appointee as the
rights of such party or parties may by law admit, if at all."
This provision in the charter was held to be constitutional in
*Gray* v. *The City of Brooklyn* (2 Abb. Ct. of App. Dec. 267),
and it was there said: "The object of the legislature is clear,
and that is to exonerate the city from liability on account of
the omission and misconduct of its officers, to impose all the
legal consequences of their acts directly upon the persons who
might be guilty of such official misconduct." Here the sole
ground upon which the plaintiffs seek to maintain this action
in the argument before us is the omission or neglect of duty on
the part of the tax officers of the city to collect the assessment,
and also on the ground of the misconduct of the comptroller in
not disbursing the moneys collected *pro rata* among all the
persons entitled to awards. But the action is thus based neces-
sarily upon the nonfeasance or misfeasance of some one or
more of the city officers, and the provision of law quoted is
plainly an answer to the action in any aspect in which it may
be viewed. Plaintiffs' remedy is confined to *mandamus* or
actions against the officers guilty of nonfeasance or misfeasance
whoever they may be.

As the city owed the plaintiffs no duty to pay the awards,
and was under no obligation directly to pay, its liability, if any,
could be based only upon negligence in not discharging a duty
which it owed the plaintiffs under the statutes, and they im-
posed no such duty. The alleged negligence was not a corpo-
rate negligence, but was the negligence only of certain officers
having specific duties to perform not for the city but for the
public, and particularly for the plaintiffs and others, and for
the negligence of such officers the provision of law quoted, and
the principles of law above referred to furnish an exemption
from liability.

It cannot be said that the city ought to have put the officers
in motion by *mandamus*, because it was under no liability or
obligation to pay the award.

We are not concerned with the question as to the manner in

which the plaintiffs if defeated in this action are to get payment of their award. It is sufficient for the present purpose that the city is not liable for it in this action. If the act under which the award was made is unconstitutional and invalid for not making suitable provision for compensation, then the plaintiffs have no claim against the city; if constitutional, the methods for procuring payment for the award pointed out in the act must be pursued.

We may say, however, that the plaintiffs cannot be deprived of their land without compensation. The provision to be found in the State and Federal Constitutions which provides that private property shall not be taken for public use without just compensation is their protection against spoliation. In the case where the property is taken by the State or a municipal corporation, the compensation to be made need not be actually ascertained and paid before the property is taken, but it is sufficient that certain and ample provision has been made by law for the compensation of the owner. (*People ex rel. Utley* v. *Hayden*, 6 Hill, 359; Cooley on Constitutional Limitations, 558.) It was doubtless supposed in this case by the legislature that ample and certain provision had been made for the payment of the damages for lands taken for this improvement. It was not anticipated, and perhaps could not have been, that the expense of the improvement would be so great as to amount to a confiscation of the lands upon which assessments were made. It was reasonably certain that a sale of the lands would produce the amount needed to pay the awards. But suppose after the plaintiffs have resorted to all the means furnished by the law to procure compensation for their lands taken, and without any fault on their part they fail, shall they lose their land? I say no! The compensation to be provided, to answer the constitutional requirement, must be certain. It is not sufficient that it is merely formal and illusory, and if in the end the law disappoints the anticipation of the legislature and of the land-owner, and fails to give compensation without any fault of the land-owner, then his land has not been legally taken, and he may re-enter upon his land, or, if needful, bring ejectment for its recovery,

and he will thus be re-possessed of his land as of his former estate. In this case, therefore, if after resorting to *mandamus* proceedings and pursuing all the remedies given them by law, the plaintiffs fail, they may re-take their land and that will then be their only remedy.

We, therefore, conclude that this recovery is wrong and that the judgment should be reversed and a new trial granted, costs to abide the event.

The foregoing opinion was written after the first argument of the case in this court. Upon the reargument additional views have been urged upon our attention by the learned counsel for the plaintiffs, which I will briefly notice.

Section 7 of chapter 631 of the Laws of 1868 is as follows: " All laws now in force relative to the widening, opening and improving streets and avenues in the city of Brooklyn, subsequent to the appointment of commissioners of estimate, and proceedings thereon, and the duties of the several persons to be employed therein, substituting the commissioners of Prospect Park in place of the common council, and also in place of the street commissioner of said city, and substituting the said commissioners of estimate and assessment in place of the board of assessors of said city, so far as relates to the opening of streets and avenues, including also payment for the work and the levy and collection of the assessments for such improvements and lien thereof, so far as they are not inconsistent with the provisions of this act, shall apply to and regulate all proceedings that may be had or taken under this act. But such proceedings shall continue to be under the direction of the commissioners of Prospect Park, who shall stand in the place of and act, when required, as the common council of the city or the street commissioner thereof would be required to act in the premises, and they shall employ an attorney and counsel and all such clerks, surveyors and other agents as may be required for the purposes of this act. "

The claim is confidently made that this section in some way imposes a duty upon the city to pay this award. It is im-

possible for me to perceive how it does so. It certainly does not, in terms, impose any duty upon the city. It expressly takes from the common council all authority to act, and substitutes in its place the commissioners of Prospect Park. It is not clear to what precise extent other laws applicable to opening and improving streets in the city of Brooklyn are made applicable to this improvement.

It is claimed that section 16 of title 4 of chapter 384 of the Laws of 1854, which was in force as part of the city charter in 1868 and subsequently, is made applicable. That section is as follows: " The city comptroller shall pay to the persons to whom damages may have been awarded in such report the amount of such damages without any deduction therefrom by way of fee or commission." That section has reference to awards made by commissioners of estimate and assessment for damages to owners of lands taken for street openings. Upon the first argument no stress was placed upon that section and indeed our attention was not called to it. Unless it is sufficient to impose a liability upon the city for the award now in question, there is certainly no other provision of law applicable to the city which does so. The section does not, in terms, impose any obligation upon the city. It does not provide that the city shall be liable for the awards or bound to pay them in its corporate capacity out of its general or corporate funds. To hold that it imposed a general liability upon the city would be against the general scheme provided in the city charter for the payment of the expenses of opening and improving streets. It simply imposes a duty upon the comptroller, and the discharge of that duty is regulated by sections 1, 2 and 3 of title 10 of the same chapter. Section 1 provides that the accounts of the city and the management of its finances shall be under the direction of the comptroller, subject to the provisions of that act, and to the ordinances of the common council. Section 2 provides that the accounts shall be distributed in three distinct classes, the first of which shall embrace all such expenditures as are to be made out of money raised by the general tax and shall be called the

general fund; the second, such as are to be made out of
money raised by a special or local tax, or assessment, and
it shall be called the special fund ; and the third class shall con-
sist of accounts of the sinking fund ; and it is provided that no
money raised for the use of one of the funds shall at any time
be used for the purposes of either of the other of such funds.
Section 3 provides that the accounts of the general fund shall
always exhibit the receipts and expenditures of each depart-
ment of the city government, and no receipt or expenditure of
money shall at any time be charged or credited to any other
than its appropriate account; that the accounts of the special
fund in addition to the general account of such fund shall, at all
times, exhibit the amounts received and paid under each item
composing such fund, with the amounts received and paid for
interest on each ; and that the sinking fund account shall
exhibit the amounts received into such fund, specifying from
what sources they have been received, together with the
amount and description of securities belonging to such fund.

If section 16 is made applicable to the Sackett street im-
provement then also are these sections 1, 2 and 3, and hence
no duty was imposed upon the comptroller to pay these awards
out of the general fund of the city, but it was his duty to pay
and he could pay only out of the special fund created by
moneys received from the assessments imposed to pay the
awards.   If the city could be sued for awards made for land
damages, and thus compelled to pay whether the money was in
the special fund for that purpose or not, then all these carefully
framed provisions would be of no use and could at any time
be disregarded and nullified.   By section 1 above cited, the
common council was authorized to pass ordinances regulating
the manner in which the comptroller should discharge his
duties, and I find among the ordinances of the city contained
in a printed volume delivered to us upon the argument of this
case by the counsel for the plaintiffs, which volume is made
evidence of the ordinances therein contained (§ 5, tit. 11 of
the same chapter), an ordinance (§ 4, art. 4 of the ordinances)
which provides that the comptroller shall draw warrants to pay

awards for land damages when they shall be audited, and "the assessments for the purpose shall be collected and in the treasury."

It is impossible, therefore, to perceive how the plaintiffs can, in this action, enforce payment of their award out of the general fund of the city. Assuming that all the sections referred to are applicable to this improvement, the only way for the plaintiffs to procure payment of their award is to compel the collection of the assessments, and thus the creation of the special fund and then procure payment out of that fund. If through the misfeasance or nonfeasance of any of the city officers the special fund is not created or payment out of it is not made to those entitled, liability to pay awards is not cast upon the city; and for reasons stated in the foregoing opinion, the city cannot be made liable for damages on account of such misfeasance or nonfeasance.

The conclusion I have thus reached is somewhat fortified by other provisions of law applicable to the city of Brooklyn. By section 6 of chapter 213 of the Laws of 1859, it is provided that "in no event shall any expense for any improvement or work contemplated by the first and second sections of this act be a charge against the city of Brooklyn except so far as said city may be the owner of land to be assessed for such work or improvement;" and by section *seven* it is provided that "it shall be a misdemeanor and punishable as such, for any person or officer in the city of Brooklyn to take from the treasury of said city, by warrant or otherwise, any money for or on account of the expense of any local improvement hereafter to be made in said city, unless the same has first been assessed, collected and paid into the treasury to the credit of such improvement." It is claimed on the part of the plaintiffs that these sections have reference only to the improvements specified in the first and second sections of the act, to-wit: regulating, grading and paving streets, etc., and that they have no reference whatever to expenses and payments for land damages. If this claim be well founded, then the whole scheme of the laws constituting the city charter is rendered harmonious, and the city, in its

corporate capacity, is protected against any liability whatever for the expense of local improvements to be discharged out of its general fund; that is, by the sections cited from the laws of 1854 it is protected against liability for awards made for lands taken for street improvements, and by the sections last cited it is protected against any liability for the expense of regulating, grading and paving the streets. But I am inclined to the opinion that section 7 last cited has reference to every expense for street improvements, as well land damages as other expenses. The word "improvement" there, as well as in many other places in the laws relating to the city, is used to embrace the whole subject of opening, regulating and establishing streets. By other laws, payments for such improvements out of any but the special fund were prohibited, and by this section it is made a crime to make such payments.

Sections 6 and 7 of the act of 1859, above cited, are incorporated in the city charter (Chap. 863 of the Laws of 1873, title 18, § 6), and there it is provided that in no event shall any expense for any street improvement be a charge against the city of Brooklyn; and there the word "improvement" is conceded to embrace the opening of streets as well as the regulating and grading them.

Section 16, above cited, was not new in the charter of 1854, but it is first found, so far as my researches enable me to say, in section 12 of chapter 319 of the Laws of 1833, which was an act to amend the charter of the village of Brooklyn. That section is precisely like section 16 substituting village treasurer in place of city comptroller, and yet it is entirely clear that that section did not impose a corporate liability upon the village to pay the awards out of its general fund, and under it an action of *assumpsit* could not be maintained against the village. (*McCullough* v. *The Mayor, supra.*) Section 16 is again found substantially embodied in section 27 of title 18 of the charter of 1873. That section is as follows: "The comptroller shall pay to the persons to whom damages may have been awarded in such report the amount of such damages, with interest at the

rate of seven per centum per annum from a day thirty days subsequent to the day of confirmation of the respective assessments *pro rata*, as moneys on account of such assessments shall be received from the department of collection." Prior to 1873 as disclosed in the record before us, it had been the custom of the comptroller to pay the awards in the order of their presentation to him, and a controversy had arisen as to whether the awards should be paid in that way or *pro rata* out of the moneys collected from assessments, and the main purpose of the changed phraseology of section 27 obviously was to provide for the *pro rata* payment and not to exempt the city from general liability for awards which before may have been supposed to exist.

I am therefore of opinion, upon a careful review of all the laws applicable to the village and the city of Brooklyn which have come to my attention, that there never has been a time when the village or city was liable in its corporate capacity to pay out of its general fund awards made for lands taken for street improvements. It is clear that it was always the legislative intent that such awards should be paid from benefit assessments.

It is further contended that the city may be held liable in this action to the plaintiffs, because the moneys collected from the assessments were paid into the city treasury ; but the words " city treasury " are misleading. They describe nothing tangible. The moneys when collected were required to be paid to the city treasurer and were by him required to be kept separate from the other funds of the city. They were to constitute a special fund applicable only to the payment of the awards. Not only could the comptroller and treasurer not appropriate these funds to any other purpose, but the city through its common council could not use them for any other purpose or control their disposition in any way. The money in the special fund in no sense belonged to the city and constituted no part of its assets. It was created solely for the benefit of the owners of awards, and was subject to the absolute control of the comptroller for the payment of such awards. If he mis-

appropriated the funds he incurred both a criminal and civil liability, but imposed no liability upon the city.

I recognize the rule that statutes should be so construed, if they can be, as to avoid a conflict with the Constitution, but there is a rule paramount to all others, that in the construction of statutes the intention of the legislature must govern. When that is ascertained it must have effect regardless of consequences. Here the intent of the legislature that the awards for the Sackett street improvement should not be a general charge upon the city is so plain and manifest that it cannot be disregarded or thwarted even if the construction which I have given to the statutes would bring them under the condemnation of the Constitution.

I, therefore, adhere to the views expressed in my prior opinion which may be summarized as follows:

*First.* There is no provision of law expressly obligating the city to pay this award.

*Second.* There is no implied obligation resting upon the city to pay it.

*Third.* The city is not liable for the misfeasance or nonfeasance of any of its officers in consequence of which plaintiffs have failed to receive payment of the award.

*Fourth.* The money collected from assessments did not come into the possession, control or ownership of the city, so as to make it liable for the payment of this award or for the misappropriation of such money.

All concur with Andrews, Ch. J., for affirmance, except Rapallo and Earl, JJ., dissenting.

Judgment affirmed.