(Supreme Court, Appellate Division, Second Department. July 13, 1897.)

MUNICIPAL IMPROVEMENTS—AWARDS FOR STREET OPENINGS.
  Under the provisions of the charter of the city of Brooklyn, as amended in 1873, during the period prescribed for the collection of assessments for street openings, and before the assessment roll is turned over to the registrar of arrears, money received from the assessments is to be paid pro rata on the awards to landowners, and at the termination of that period the city is forthwith liable to pay any awards then unpaid in whole or in part.

In the matter of opening Bay Twenty-Third street between Eighty-Sixth street and Benson avenue, and in the matter of the closing of De Bruyen's Lane between Eighty-Sixth street and Benson avenue. Motions were made to vacate and set aside orders appointing commissioners to estimate the damages caused by the opening of one street and the closing of the other. Denied.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Nathaniel H. Clement, for the motion.
Joseph A. Burr, Corp. Counsel, opposed.

CULLEN, J. There is involved in this application but one question,—whether, by the present charter, the city of Brooklyn is bound to pay, either primarily or ultimately, awards for lands taken for street openings. If the city is not liable for such awards, then undoubtedly the charter provisions as to street openings are unconstitu-

tional and void; for the landowner cannot be relegated to the assessment district as the sole source of payment of his award. Sage v. City of Brooklyn, 89 N. Y. 189; Mitchell v. Village of White Plains, 138 N. Y. 627, 33 N. E. 1083, affirming 62 Hun, 231, 16 N. Y. Supp. 828. The Sage Case decided that under the charter as it stood prior to 1873 the city was liable for such awards. The liability was placed on the provisions of section 16, tit. 4, of the charter of 1854:

"The city comptroller shall pay to the persons or the attorneys or legal representatives of such persons to whom damages may have been allowed in such report, the amount of such damages without deduction therefrom by way of fee or commissions."

In 1873 this section was amended so as to read:

"The comptroller shall pay to the persons (or to the attorneys or legal representatives of such) to whom damage may have been awarded in such report, the amount of such damages, with interest at the rate of seven per cent. per annum from a day thirty days subsequent to the day of confirmation of the respective assessments, pro rata, as moneys on account of such assessments shall be received from the department of collection." Laws 1873, c. 863, tit. 18, § 27.

It is this amendment that gives ground for the present controversy. It is insisted by the counsel for the landowner that, though the duty imposed on the comptroller to pay was, under the charter of 1854, absolute, it is, since the amendment of 1873, only qualified, being limited to the receipt from assessments as the source of such payment. If the present section were an original one, with no history, this argument would be cogent, if not controlling. But, in the light of previous legislation, and the custom which had prevailed in the city as to the payment of awards, we think it was not the intention of the legislature by the amendment to affect the city's responsibility. Prior to the decision in the Sage Case, the liability of the city to secure the payment of awards was considered a question of very grave doubt. McCullough v. Mayor, etc., 23 Wend. 458, was regarded as an authority against such liability. It had been the practice in the comptroller's office to pay the landowners who first filed claims for their awards in that office the amount of their awards from the moneys received from the assessment. Thus payment to the landowners who filed their claims later was deferred, and in some cases altogether denied. It was to correct this practice, and not to affect the question of the city's liability or nonliability for payment, that the statutory amendment was enacted. This is clearly pointed out by Judge Earl in his dissenting opinion in the Sage Case, and is well known to all who are conversant with the municipal history of the city of that time. It is a cardinal rule that a statute should be so construed as to be constitutional instead of unconstitutional, if its terms permit of that result. To hold the amendment of 1873 as relieving the city from ultimate responsibility for awards to landowners, would render invalid all street openings which have been had since its enactment, and deny the city the power to make such improvements without further legislation. Certainly, this is a result to be avoided; and we think that the amendment of 1873 should not be so construed as to effect that result, when it may be said to be a matter of common knowledge within the city that the amendment

was enacted for no such purpose. We think full effect can be given to the amendment of 1873 by holding, as suggested by the learned corporation counsel, that during the period prescribed for the collection of the assessment, and before the assessment roll is turned over by the collector to the registrar of arrears, money received from assessments is to be paid pro rata on the awards to landowners, and that at the termination of such period the city is forthwith liable to pay any awards then unpaid, either in whole or part.

The motion should be denied, with $10 costs and disbursements. All concur.