### In re MAYOR, ETC., OF CITY OF NEW YORK.

#### In re ELM ST.

(Supreme Court, Special Term, New York County. February 7, 1895.)

1. CONSTITUTIONAL LAW—INCONSISTENT REMEDIES—DUE PROCESS OF LAW.

Consol. Act, § 992, as amended by Laws 1893, c. 660, provides that a person may have an action for damages caused by the widening or opening of a street by order of the commissioners, and that the remedy by action should not be given, but the summary remedy of mandamus substituted. An amendment in 1893 added the provision as to the substitution of the remedy by mandamus. *Held*, that the amendment would control, and section 992 was not unconstitutional, as amounting, by reason of its inconsistency, to a provision for the taking of property without due process of law.

2. SAME—STREET IMPROVEMENT—CITY DEBT—APPOINTMENT OF COMMISSIONERS.

An order for the appointment of commissioners of estimate and apportionment for the widening of a street will not be refused because the cost of the improvement may exceed the limit of the city debt declared by Const. art. 8, § 10, where the official report of the comptroller shows that the city debt has not reached the limit, and that the cost has not yet been determined, and that it is impossible at the time to estimate it, and where affidavits indicate that there will be an ample margin to pay for all city indebtednesses.

Application of the mayor, etc., of the city of New York for the appointment of commissioners of estimate and apportionment in the matter of the proposed opening, widening, and extending of Elm street. Commissioners appointed.

See 61 N. Y. Supp. 1142.

PATTERSON, J. This is an application made by the mayor, aldermen, and commonalty of the city of New York for the appointment of commissioners of estimate and apportionment in the matter of the proposed opening, widening, and extending of Elm street, in the city of New York. It is opposed by various property owners on various grounds of objection, all of which have received careful consideration. I do not find that any of the merely technical objections are of such character as to require special reference to them now; but there are two matters of substance urged, which are, from their importance, entitled to an extended expression of the views of the court concerning them.

It is claimed that the act of the legislature under which this proceeding is taken is unconstitutional, in that it authorizes the taking of private property without just compensation. The application is made under sections 955–1008 of the consolidation act, relating to New York City, as amended by chapter 660 of the Laws of 1893, and the chief objection now made relates to the amendments of that year. It is suggested by the counsel to the corporation that the mere proceeding to appoint commissioners is one not to be embarrassed by constitutional questions, inasmuch as such appointment may be made irrespective of the question of compensation to property owners, and is not at all dependent upon that question. But I am not disposed, in a matter of so much consequence as this, to take any step whatever in the proceeding if a constitutional question is to be left for discussion for the first time at a future stage of the matter, and therefore I have examined that question now, and with the result that I do not regard the objection as well taken. It must now be considered as the settled law of this state that such a provision as that under consideration is not repugnant to the constitution. The subject of payment prior to or concurrently with the taking of private property by the state or one of its municipalities under the right of eminent domain has been considered by the court of appeals in several adjudicated cases. In Sage v. City of Brooklyn, 89 N. Y. 195, it is said:

"The courts, in considering the constitutional guaranty, have departed from what may seem its plain and natural meaning, and have held that the payment for property taken in invitum for public use need not be concurrent with the taking, but that it is sufficient if the law authorizing the taking also provides a sure, sufficient and convenient remedy by which the owner can subsequently coerce payment by legal proceedings;" and "that the pledge of the faith and credit of the state, or one of its political divisions, for the payment of the property owner, accompanied with practicable and available provisions for securing the application of the public faith and credit to the discharge of the constitutional obligation of payment, has been held to be a certain and sufficient remedy within the law."

In Re Mayor, etc., of City of New York, 99 N. Y. 577, 2 N. E. 643, the doctrine of the Sage Case was reasserted, and it is said, in effect, that where an act "puts the power of the public purse of the city behind the debt as the source of its payment," and a sufficient and convenient remedy to enforce payment in the courts is secured, the legislation does not offend against the constitutional guaranty.

The question then arises as to the sufficiency of the provisions of the consolidation act referred to to secure the payment to the property owner of the compensation to which he is entitled, and at the outset of that inquiry it is claimed that section 992 of that act as amended in 1893, and as it now reads, is so defective and contradictory in its provisions that a property owner would not be sure of a prompt and complete remedy, but might be subjected to the delays and uncertainties attending doubtful constructions of ambiguous, contradictory, and mutually destructive provisions of that section. It is apparent that this section bears the clear stamp of slovenly legislation. In one and the same section it is provided that the property owner may have an action for his award and also that he

shall not have an action, but another proceeding. To those acquainted with the method of preparing for legislative consideration enactments amendatory of existing statutes, this contradiction is easily accounted for, but the fact remains that as the section reads there are two inconsistent provisions. One does not, however, by necessary legal interpretation, nullify the other, nor can there be any doubt whatever of the legislative intent. An inspection of the prior statute and an understanding of what the legislature proposed to accomplish by the amendment of 1893 will show that it was intended that the provision concerning an action should be superseded by that furnishing the more summary and expeditious remedy by mandamus. Under such circumstances the rule of construction is well settled, although it is one only to be resorted to in extreme cases and where all efforts to reconcile conflicting provisions are futile; and such is the case here. The rule referred to is "that, if the latter part of a statute be repugnant to the former part, it shall stand, and so far as it is repugnant to a repeal of the former part; because it was last agreed to by the makers of the statute" (quoted from Bacon's Abridgment in Harrington v. Trustees, 10 Wend. 547), and in Sedg. St. & Const. Law it is stated in the same words. This rule is peculiarly applicable here. The provision concerning actions in the amendment of 1893 is exactly in the same words as the corresponding provision in the act of 1882. Now it is the last-named act that was to be amended, and it cannot be conceived that the legislature intended to amend it by re-enacting and at the same time nullifying it. It is evident that it was intended to substitute something else for it, and that was done by declaring the remedy by action should not be given, but, instead, the speedier, more effective, and more readily enforceable remedy by mandamus should be given to the property owner, thereby insuring him not only the remedy which would bring him his money, but which would compel its payment by process against the persons of the officials who should refuse to execute the mandate of the court. Such being the reasonable and only admissible construction of the statute, the provisions it makes for payment fulfill the requirements of the law, and furnish a sure, sufficient, and convenient remedy by which payment of awards may be compelled. All damages, with interest from the date at which title is vested in the city, and costs, are to be paid first from the fund for street and park opening, provided for by existing laws. If that payment is not made, the court in which the proceedings are pending shall require and direct the comptroller to pay the same from that fund. If that were all, the objections taken would be valid; but the further provision is made that, if the damages awarded exceed the balance of the specific fund first to be resorted to after deducting outstanding claims against it, the comptroller shall raise the required money by the issue and sale of revenue bonds, and may be compelled by the courts to do so by mandamus on the application of the person to whom the damages have been awarded. It seems to me that these provisions fully secure the property holder, and furnish a certain and secure remedy for the payment of his compensation, and that he has behind him

·the whole security of the municipal purse, and the power of the court to compel the purse holder to open it for him.

It is further urged in opposition to the application that the condition of the city debt is such that it has nearly reached the limit of 10 per cent. referred to in section 10 of article 8 of the constitution of the state of New York, and that, as all indebtedness exceeding 10 per cent. of the valuation of real estate subject to taxation is void, the indebtedness for this projected improvement may not be ·enforceable against the city. This is a most serious contention, and, if it were true in fact, I should certainly decline to make any order in the matter. But it is not true, according to the sworn statements presented of the comptroller and other officials connected with the ·city government. The indebtedness of the city as it stands is the test of the matter, and according to the affidavit of Comptroller Fitch the situation is as follows: Valuation for all purposes of taxation of real estate in the city of New York for 1894 was $1,613,057,735, 10 per cent. of which is $161,305,773.50; net funded debt 31st December, 1894, $104,078,820.81,—leaving a margin within the 10 per cent. of $57,226,952.69. I must be guided by the verified ·official figures in taking this amount. It is urged, however, that other improvements authorized by law will absorb all this, and more, ,and that the cost of the rapid transit improvement and various other matters must be taken into consideration on this particular application. But no reason is shown why the other improvements should take precedence of this. Not a dollar of indebtedness has been in- ·curred for the rapid transit measure. Its cost has not been ascertained, nor has any contract been made in relation to it. Mr. Fitch says in an affidavit made by him, and presented by the corporation ·counsel, that he is a member of the rapid transit commission, and that the length, route, method of construction, and cost thereof have, none of them, been determined as yet; so that it is impossible for any one to say what amount, if any, the city will be compelled to pay for the construction of the route. Surely, every public improvement in the city of New York is not to be stopped until all those ·things are determined, and the indebtedness incurred. That its cost, when ascertained, and indebtedness is incurred for it, will raise the ·city's debt to the constitutional limit, is not proven, but only prophesied; and, if the latter method is to be resorted to at all, the indications all are, as the affidavits of the city authorities referred to show, that there will be an ample margin during the next five years, and within the 10 per cent., for all indebtedness of every kind, including $50,000,000 for rapid transit purposes.

The objections are overruled, and the order asked for will be ·made. The matter is one of great importance, the improvement a costly one, and the interests of the property holders so serious that ·they should be confided to the care of men of the highest character and of great experience, and therefore I have concluded to appoint Messrs. William G. Choate, Charles H. Truax, and Joel B. Erhardt ·the commissioners.