(99 App. Div. 195).

### DEGNON–McLEAN CONST. CO. v. CITY TRUST, SAFE DEPOSIT & SURETY CO. OF PHILADELPHIA.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. CONTRACTS—EXCUSE FOR BREACH—NONPERFORMANCE BY OTHER PARTY.

Where G. was to furnish a certain amount of cut granite to plaintiff, and was to be permitted to use certain specified premises for piling granite, he was not entitled to all of the space on the premises unless needed, and, all of it never having been needed, he was not excused from performance on the ground that plaintiff had failed to perform by furnishing such space.

2. PRINCIPAL AND SURETY—RELEASE OF SURETY—CHANGE OF CONTRACT.

Where a contract stipulated that plaintiff should pay on the 20th of each month for all stone delivered thereunder by the other party, expenditure by plaintiff at the request of the other party of more than the amount due, made in paying bills owing by the other party, was not a change of the contract releasing the other party's surety for performance.

3. SAME—LIABILITY OF SURETY—MEASURE OF DAMAGES.

Defendant, who was surety for performance of a contract for the delivery of rock to plaintiff, was notified of the principal's failure to deliver, but refused to offer any suggestion or to complete the contract. Plaintiff then relet the contract to F. under an agreement whereby F. deducted from the contract price $2 per cubic yard of stone in consideration of plaintiff paying expense of unloading, furnishing tools, etc., and there was evidence tending to show that the value of the work and tools furnished amounted to more than the rebate. Held, in action against the surety, that plaintiff was entitled to recover the rebate.

4. SAME—INTEREST.

Where, in an action against the surety on a contract for damages for failure of the principal to perform, the surety knew the terms of the contract broken, and knew how much in excess thereof it cost plaintiff to procure the accomplishment of the object by reletting the contract, the damages, though unliquidated, were ascertainable, and the plaintiff was entitled to interest on recovery from the time of demand.

Appeal from Trial Term, New York County. ·

Action by the Degnon-McLean Construction Company against the City Trust, Safe Deposit & Surety Company of Philadelphia. From the judgment, and from an order allowing interest thereon (82 N. Y. Supp. 944), and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Frederic J. Swift, for appellant.
Herman Aaron, for respondent.

McLAUGHLIN, J.   The plaintiff, having a contract with the city of New York for the construction of a portion of the foundation of the new East River Bridge, made a contract with a firm by the name of Price & Garrison to furnish 9,941 cubic yards of cut granite of certain descriptions and at specified prices, and to secure the faithful performance thereof they gave to the plaintiff an undertaking in the penal sum of $50,000, with the defendant in this action as surety.   Price & Garrison furnished only 110 cubic yards of the granite contracted for, and the plaintiff, claiming there had been a breach of the contract, brought

this action to recover from the surety the damages alleged to have been sustained by reason thereof. It had a verdict for $31,658.26, upon which interest was allowed from the date when the plaintiff demanded payment from the defendant, amounting to $6,041.44. The defendant appeals from the judgment entered on the verdict, from the order allowing interest, and from the order denying a motion for a new trial.

The validity of the judgment is challenged principally upon four grounds, which will be considered in the order named. First, that Price & Garrison were justified in breaking their contract, inasmuch as the plaintiff failed to perform on its part; second, that the plaintiff varied its contract with Price & Garrison after the undertaking had been given, and thereby the defendant was discharged; third, that improper items of damage were allowed; fourth, that interest was erroneously granted on the amount of the verdict.

1. The contract between the plaintiff and Price & Garrison provided that the plaintiff would permit them to have piled up or stored upon certain specified premises (consisting of upwards of 40,000 square feet), preparatory to cutting, a quantity of stone to the extent of 500 cubic yards in excess of the deliveries provided for in the contract, and that they would "be permitted, without charge, for the purpose of landing, cutting, and delivering said granite, to use the premises" referred to. It is contended that Price & Garrison were not permitted to use all of such premises. It is true they did not use all of the premises, nor was there any occasion for their so doing. This provision of the contract must receive a reasonable construction. All it means is that the plaintiff would permit Price & Garrison to use all of that space if it became necessary for them to do so in carrying out their contract. They could not use it for any other purpose, and they were not entitled to all of it unless it was necessary for them to have it. That they never had occasion to use it all, or any more of it than they did use, is perfectly evident from a slight consideration of the testimony bearing on that subject. Plaintiff's manager, who had charge of the work, testified that no request for additional space was ever made by Price & Garrison, and that it was without incumbrance "other than possibly a little rubbish that might accumulate as it does accumulate on large work." The foreman of Price & Garrison, a witness sworn on behalf of the defendant, testified there was only one derrick for use in the work, and it was necessary, in order to handle the granite, that it should be within the radius of its arm; that the stonecutters could not do work outside of such radius. He also testified that, in the absence of another derrick, Price & Garrison did not need any more room, and Price himself testified that: "To have used additional space it would have been necessary to get another derrick. * * * I could not have used any additional space without having another derrick." As already said, Price & Garrison only delivered 110 cubic yards of granite. They had all the space which they required to properly handle and store this amount, and their failure to perform was in no way due to the fact that they did not have additional space. The defense based upon the claim that they did not have all of the space was not established.

2. The proofs adduced at the trial would not have justified a finding that the contract between the plaintiff and Price & Garrison was

changed. What is claimed in this respect is that the plaintiff failed to pay for the granite which was actually delivered at the time and in the manner provided in the contract. The contract provided that payments should be made on the 20th of each month for all stone inspected and accepted up to the 7th of that month. The granite delivered at the contract price amounted to $1,326.33. This sum, it is insisted, could only be paid in one way, and that is in cash; and, inasmuch as this amount in actual cash was not paid to Price & Garrison, the surety was thereby relieved. It is true that this amount in cash was not actually paid into the hands of Price & Garrison, but it is not true that the plaintiff did not pay it for them; on the contrary, it appears that it paid to or for them, at their request, certain bills for freight, for a derrick, for the use of an engine and for labor—all incurred in prosecuting the work under the contract—amounts which, with the cash paid, aggregated upwards of $1,800. The payment of these bills was just as much a payment within the contract as though the amount of them had actually been paid to Price & Garrison in cash. The contract was not changed. The plaintiff had paid what it had agreed to, and Price & Garrison had received all to which they were entitled. As said in Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669:

"We are not dealing now with an actual change in the terms of the contract, but with acts or omissions of the plaintiff in the performance, which, in order to operate to release the surety, must be of such a character that it can be said that her position was changed to her prejudice."

It made no difference to the defendant whether Price & Garrison paid the bills it had incurred in prosecuting the work under the contract, or the plaintiff, at their request, did it for them. The result was the same, and the defendant, as surety upon the undertaking of Price & Garrison, was not injured or prejudiced by it in any way.

3. After Price & Garrison had failed to perform, and it became evident that they could not or would not make further attempts to go on with the work, the plaintiff, after notifying the defendant, and affording it an opportunity to complete the contract if it desired to do so, obtained bids from various parties, which it submitted to the defendant, at the same time requesting any suggestions it might see fit to make with reference to them. The defendant declined to make any suggestions, and thereupon the plaintiff let the contract to one Foster, he being the lowest bidder therefor, and thereafter the plaintiff requested the defendant to pay to it the difference between what it had to pay him and what it would have had to pay Price & Garrison had the contract been performed by them. In the Foster contract he agreed to furnish the granite, cut, and ready for setting, at a specified price per cubic yard, and further agreed, if the plaintiff would pay the expense of unloading the granite from the vessels in which it was shipped, the dockage, the cost of delivering the rough stone on the site where it was to be cut, furnish the tools and appliances required for cutting, including the necessary steam power and place in which to do the work, he would deduct $2 per cubic yard from the contract price. This the plaintiff did, and it is claimed it ought not to have had a recovery for this rebate. The proof tended to show that the actual value of the work done and the materials furnished by the plaintiff, for which it was allowed the rebate

of $2 per cubic yard exceeded the amount of the allowance. Plaintiff's manager testified that at the time the work was done and the materials furnished he made a careful computation of the expenses, and they were accurate, and the actual cost of the same was between $2.40 and $2.50 per cubic yard. The fact that the plaintiff saw fit to do part of the work which Price & Garrison had agreed to do did not deprive it of the right to recover from them or their surety the legal damage which it sustained by the breach of their contract. Some evidence was offered to the effect that Foster did not cut his stone on the premises that were to have been provided for Price & Garrison, but there was nothing to show that the cost of delivery was increased thereby, or that there was included in the expense incurred by the plaintiff in getting the rebate of $2 per cublic yard anything for the space where the stone was cut. Plaintiff, therefore, having actually incurred an expense of $2 per cubic yard in doing what it did with the granite furnished by Foster, it was entitled to have such expense considered in determining the actual damage which it had sustained by the breach of Price & Garrison's contract.

Finally, it is claimed that interest was improperly added to the verdict. During the course of the trial the question was presented as to' whether the plaintiff, in case it had a recovery, was entitled to interest upon the damages sustained, and it was arranged between counsel that such question should be determined by the learned trial justice after a verdict had been rendered. He held that the plaintiff was entitled to interest, and the same was added to the verdict. The interest was properly allowed. It is true that the damages recovered in one sense were unliquidated, but this did not prevent the allowance of interest, inasmuch as means were accessible to the defendant, at the time the demand was made upon it to pay, to ascertain by computation the amount to which the plaintiff was entitled. The general rule is that, even though damages are unliquidated, this does not deprive a party of interest if there are at the time the demand is made for payment, means accessible to the party sought to be charged of ascertaining by computation or otherwise, the amount to which the other party is entitled. Sloan v. Baird, 162 N. Y. 327, 56 N. E. 752. See, also, Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101. Defendant could have ascertained at the time the demand was made upon it precisely to' what the plaintiff was entitled. It knew the terms of the contract with Price & Garrison, and it also had knowledge, or could have ascertained the terms of the Foster contract. Being in possession of these facts, it could, by a simple computation, have determined how much more it cost the plaintiff under the Foster contract than it would have cost it had Price & Garrison performed.

Other questions are raised by the appellant, but, after an examination of them, they do not seem to be of sufficient importance to be here considered.

It follows that the judgment and orders appealed from should be affirmed, with costs. All concur.