PEOPLE ex rel. CRANFORD CO. v. WILLCOX et al., Public Service Com'rs.

(Supreme Court, Appellate Division, First Department.   December 20, 1912.)

1. MANDAMUS (§ 102*)—COMPELLING ISSUANCE OF VOUCHERS FOR PAYMENT FOR PUBLIC WORK.

Under Rapid Transit Act, § 37 (Laws 1891, c. 4), as amended by Laws 1909, c. 498, § 17, providing for the payment on contracts for the construction of the subway by the comptroller of the city of New York only on vouchers certified by the Public Service Commission, and under a contract for the construction of a section of the subway which provides that payment shall be made to the contractor only on vouchers certified by the Commission, mandamus lies to compel the issuance of a voucher for compensation actually due the contractor.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 217–219;  Dec. Dig. § 102.*]

2. ARBITRATION AND AWARD (§§ 20, 57*)—VALIDITY OF ARBITRATION—AGREEMENT.

A contract for the construction of a section of a subway provided for arbitration of the question of additional work. Arbitrators disagreed as to whether work was additional work for which the contractor was entitled to compensation, but they did not consider the value of the work if deemed additional work.   An umpire was appointed, who decided that the work was additional work, and then proceeded to inquire into the amount of compensation therefor.   The jurisdiction of the umpire to pass on the question of compensation was questioned, and the contractor and the Public Service Commission entered into a further agreement for arbitration of the amount of additional compensation.   The arbitrators made an award, including interest from the date of the certificate of final completion of the work.   Aside from the question of interest, the arbitrators adhered to the terms of the submission.   *Held*, that the award was under the agreement, and was binding on the Commission so far as it related to the principal sum found due as additional compensation.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 87–96, 280–288;  Dec. Dig. §§ 20, 57.*]

3. ARBITRATION AND AWARD (§ 20*)—VALIDITY OF ARBITRATION—AGREEMENT.

A submission to arbitration of the amount which a contractor is entitled to receive for additional work includes the question of the right of the contractor to interest on the amount of the extra compensation allowed from the date of the completion and acceptance of the work, and an award fixing the compensation, and declaring that the same shall draw interest from such date, is binding.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 87–96;  Dec. Dig. § 20.*]

4. INTEREST (§ 19*)—ALLOWANCE—UNLIQUIDATED CLAIMS.

The rule that interest cannot be allowed on unliquidated claims depends on whether the amount due can be ascertained by the debtor by computation, or means accessible to him when demand is made, and, when that is true, interest is properly allowed.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40;  Dec. Dig. § 19.*]

5. INTEREST (§ 19*)—ALLOWANCE—UNLIQUIDATED CLAIMS.

Where there is nothing to suggest that the amount a contractor was entitled to receive as additional compensation for extra work could not be ascertained, interest was properly allowed from the date of the contractor's demand for additional compensation.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40;  Dec. Dig. § 19.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of the Cranford Company, against William R. Willcox and others, as Public Service Commissioners for the First District. From an order denying motion for a peremptory writ, relator appeals. Reversed, and motion for mandamus granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Edward M. Grout, of New York City, for appellant.
George S. Coleman, of New York City, for respondents.

SCOTT, J. The relator is a contractor for building a section of the underground Rapid Transit Railway. The defendants are the Public Service Commissioners for the First District in the state of New York, who have succeeded to all the powers and duties of the Board of Rapid Transit Commissioners (chapter 429, Laws 1907). The purpose of this proceeding is to compel the defendants to certify to the comptroller of the city of New York for payment the amount of an award in arbitration. The relevant facts, although somewhat complicated, are not in dispute.

On May 27, 1907, the Board of Rapid Transit Commissioners, in the name and behalf of the city of New York, contracted with relator for the construction of a section of the subway. On February 18, 1908, the contract was amended in certain particulars with the consent of the relator and the Public Service Commission, which had then succeeded to the powers and duties of the Rapid Transit Board. There is no question made as to the validity of this amendment. The powers of the Commission are very broad in that respect, and the contract itself provided for changes in the plans and specifications at the will of the commissioners, and for compensation for increased or additional work necessitated thereby. It also provided that it might be altered in more material provisions by a written instrument duly authorized by the board and consented to by the contractor.

The contract, as amended, called for the driving of certain wooden piles of a specified size and length at the intersection of Canal and Centre streets. As the work progressed the engineer determined that it was impracticable or inadvisable to use wooden piles, and directed that steel piles filled with concrete should be used instead. The contractor, as he was bound to do, complied with this requirement, but promptly notified the Commission that he should claim that the work thus ordered was additional to that included in the contract, and that it would be more expensive than the piling required by the contract. The contractor has fully completed his contract, his work has been accepted and wholly paid for, except as to the matter involved in this proceeding, the determination as to which has been expressly reserved, so that relator is not concluded as to this claim by reason of having accepted payment for the amount conceded to be due him.

The contract provided that, in case there should be a dispute as to whether any work required was within the contract price, the contractor should do the work as ordered, leaving the question of its

right to be compensated therefor as extra or additional work to be decided by arbitration in the manner elaborately provided for in the contract. The arbitration provisions were in brief that (a) the contractor shall file a claim, (b) the engineer shall make a written determination thereon allowing or disallowing it, (c) either party may appeal to two arbitrators, one chosen by each, (d) if the arbitrators disagree, and so certify, the controversy shall be determined within five days (unless time is extended by his order) by an umpire chosen by the executive committee of the chamber of commerce, whose award shall be effectual if concurred in within such five days by one of the arbitrators. The contractor duly filed claims with the engineer for extra compensation for driving piles during the months of August, September, and October, 1908. The engineer disallowed these claims, which were duly referred to two arbitrators chosen as provided in the contract. Pending the decision of the arbitrators it was mutually agreed that other claims for the same work during the months succeeding October, 1908, should be deemed to be decided according to the decision of the arbitrators. After considering the claims, the arbitrators disagreed, one holding that the work was extra or additional work for which the contractor was entitled to be paid, and the other holding that it was not. The arbitrators did not consider or attempt to pass upon the question as to how much the contractor should be paid if the work was to be considered as extra or additional work. Upon their disagreement, an umpire was appointed who duly decided that the work was extra or additional work, and that the contractor was entitled to be paid therefor. Having thus decided, he proceeded to inquire how much should be paid to the contractor. A question as to his jurisdiction to pass upon this question at once arose, the commission contending that under the terms of the contract the umpire had authority only to pass upon questions as to which the arbitrators had disagreed, and inasmuch as the arbitrators had not considered the question as to the amount to be paid to the contractor, and consequently had not disagreed thereon, it was not competent for the umpire to pass upon it. To avoid any question upon this score, the contractor and the commissioners entered into a further arbitration agreement, which recited the arbitration proceedings theretofore had, and the question which had arisen as to the authority of the umpire to determine the amount of additional compensation to which the contractor is entitled. The arbitrators appointed were the same persons who had been arbitrators and umpire under the earlier arbitration, and the submission to them was in the following terms:

"Now, therefore, the parties to this agreement do agree that the said Charles Strauss, said Edward S. Clinch, and said Edward G. Whitaker be and they hereby are constituted and appointed arbitrators (the determination of any two of them to be binding) to hear and determine the question of the amount of additional compensation which the contractor is entitled to receive on account of all of said pile driving work (including so much of said work as was in arbitration as aforesaid), and that all fees and expenses of said arbitrators shall be borne and paid equally by the parties to this agreement.

"In making their determination said arbitrators shall assume as having been finally determined that the contractor is entitled to receive from the city as extra compensation the excess in cost of driving the piles in the man-

ner in which they were driven over and above the cost of driving the piles required under said contract, as modified, the city not conceding, however, by this agreement that the cost of driving the piles in the manner in which they were driven exceeded the amount which it would have cost to drive the piles as required under said contract, as modified.

"If said arbitrators shall determine that reasonable profit and administration expenses should be added to the actual cost of the work as done and to the actual cost of the work required to be done, as aforesaid, the word 'cost' as hereinbefore used shall be interpreted to include such profit and administration expenses."

The arbitrators in due course made an award to the plaintiff of the sum of $59,867.64, with interest from August 4, 1910, being the date of the certificate of final completion of plaintiff's work under said contract.

The Commission having refused to certify this amount to the comptroller of the city of New York for payment, this proceeding was instituted to compel such certification.

[1] The Special Term, without passing upon the validity of the award, denied the motion upon the ground that mandamus was not the proper remedy, but that the plaintiff should enforce his right by action against the city of New York; and this presents the first question to be considered. In dealing with this question it is desirable to keep in mind the fact that what the relator claims is for work done under the contract, and not damages for a violation of the contract. If its claim were of the latter nature, it may well be that relator's appropriate, perhaps its exclusive, remedy would be by a suit at law. The contract, as amended, provided that:

"The board shall * * * have the right, by notice to the contractor to require additional work to be done, or additional materials to be furnished or both. * * * If additional work or materials shall be so required, then the reasonable value thereof shall be additionally paid to the contractor."

Again:

"The contractor shall complete the entire work * * * for the prices hereinbefore agreed upon; except that for extra work, if any, ordered by the board there shall be additional payment."

And all the negotiations, agreements, and contracts between relator and the Public Service Commission recognize the fact that the work done by the contractor for which he now seeks payment was ordered and performed under the terms of the contract, and that payment therefor, if due, would be a payment under the contract. We do not understand that there is any difference between the parties on this point. Treating the claim, therefore, as one under the contract, and assuming, for the present at least, that the relator's right to be paid has been established by the award of the arbitrators, is mandamus a proper remedy? Section 37 of the Rapid Transit Act (chapter 4, Laws 1891, as amended by Laws 1909, c. 498, § 17), after providing for the issue of bonds to meet the expenses of construction, provides that payment on account of construction contracts shall be made by the comptroller of the city of New York only "upon vouchers certified by the Public Service Commission," and the contract provides that payments shall be made to the contractor only upon vouchers certified by

the board. The issue of such a voucher is therefore constituted a condition precedent to a successful demand by a contractor upon the comptroller for a payment under the contract, and we see no reason why the absence of such a voucher would not be a complete answer to an action against the city for such a payment. The provisions of the Rapid Transit Act are somewhat peculiar in that, while it authorizes the Public Service Commission to contract and sue in the name of the city of New York, to institute mandamus proceedings, and to sue for penalties, it does not constitute the Commission a corporation nor authorize actions to be brought against it. There is therefore no action at law which the contractor can maintain against the Commission, and his only apparent remedy, in case of the refusal of the Commission to perform an act which is essential to the preservation of his rights, is by writ of mandamus. There is abundant authority for the use of this remedy. A case much like the present was King v. City of Brooklyn, 42 Barb. 627. The Legislature had by a special act provided for the widening of Fourth avenue, Brooklyn, and had appointed a board of commissioners to take charge of the work. The city, as in the present case, was directed to issue its bonds and pay the proceeds to the city treasurer to be expended upon order of the commissioners. A contractor, having a controversy with the commissioners over the amount due him, sued the city, without having first obtained an order from the commissioners. It was held that he could not recover, that no suit would lie against the city until the commissioners had given their order upon the city treasurer, and that, if an order was unjustly refused, the contractor's remedy was by a proceeding for mandamus against the commissioners, in which proceeding the issue as to the contractor's right to payment could be determined.

To the same effect was Dannat v. Mayor, etc., 66 N. Y. 585, wherein it was held that a contractor with the board of education could not recover against the city until he had obtained a draft or order from the board. In a subsequent appeal in the same case (77 N. Y. 45), it being shown that the board of education had given the necessary voucher, the contractor was held to be entitled to a mandamus against the comptroller for the payment of the amount due. Matter of McDonald, 80 App. Div. 210, 80 N. Y. Supp. 536, arose under a contract similar to the one held by relator. The contractor had been required to do extra work, not specified in his contract, in order to provide for operating the railroad by electricity. The Rapid Transit Board gave the necessary voucher, which the comptroller refused to honor. It was held that the board had authority to order the extra work under the contract, that it formed a part of the work of construction, and that, the proper voucher having been given, the contractor was entitled to a mandamus to compel payment.

We entertain no doubt that, if the contractor is entitled to be paid in accordance with the award of the arbitrators, it must, before it can enforce payment by the city, obtain a voucher from the Public Service Commission, and that the only proceeding by which the Commission can be compelled to give a voucher is by mandamus.

[2] This suggests the second question, whether the award of the

arbitrators is valid, and establishes the relator's right to receive a voucher. The powers given to the Board of Rapid Transit Commissioners, and its successor, the Public Service Commission, by the Rapid Transit Act, are extremely broad, including the power to modify and amend any contract, and to provide in any contract for a determination of disputed questions by arbitration. The particular form or method of arbitration is not prescribed in the act; that matter being left to the determination of the board. As has been seen, a particular mode of arbitration was provided for in relator's contract, and the disputed questions between the relator and the Commission were submitted to arbitration in strict accordance with the terms of the original contract up to the point that a determination was arrived at that the work for which compensation was claimed was extra work within the meaning of the contract. This award was accepted and acquiesced in by the Commission. When it came to the question as to the amount that should be paid the contractor, a slightly different method of arbitration was agreed upon—a difference, indeed, rather of form than of substance. This agreement, which is denominated a "contract," was executed by the Public Service Commission with all the formality customarily used in the execution of contracts and other formal documents. It is not stated in so many words that it is executed as an amendment of the original contract, or that the arbitration therein provided for is intended to be taken as a continuation of the arbitration commenced under the terms of the original contract, but we think that such was its clear effect. The fact that the agreement for arbitration does not in terms state that it was made as an amendment of the contract provisions on that point is not important if it can be seen, as we think it clearly can, that such was the intention of the parties. A difficult and perplexing situation had arisen as to the proper construction to be given to the contract provisions for arbitration, involving a question of the jurisdiction of the umpire to proceed to a complete determination of the controversy. Both parties, doubtless, were anxious to preserve the principle of settling disputes by arbitration, and to avoid needless and prolonged litigation. The simplest way out of the difficulty was to agree upon an amendment or modification of the mode of arbitration, and this, we think, was the effect of the agreement to refer the question of cost to three arbitrators. We are therefore of the opinion that their award was under, and not outside of, the contract. Thus holding, we are further of the opinion that the award is binding upon the Commission, certainly except as regards the item of interest which will be considered separately. The submission provided that the arbitrators should determine the amount of additional compensation which the contractor was to receive; that in making such determination the arbitrators were to assume as having been finally determined that the contractor was entitled to receive as extra compensation the excess in cost of driving piles in the manner they were driven over and above the cost of driving piles as required under the contract, as modified, and the arbitrators, if they so decided, might include as part of the cost reasonable profit and administration expenses. The arbitrators appear to have adhered strictly (leaving

out of question now the matter of interest) to the terms of the submission, and to have confined themselves thereto. It is true that the city did not concede that the cost of driving the piles as they were driven did exceed the amount which it would have cost to drive them as required by the contract, and thus reserved the right to litigate that question before the arbitrators. The minutes of the proceeding before the arbitrators are not included in the appeal papers, but we do not understand that the Commission complains that it was refused an opportunity to contest the reserved question, or that any relevant evidence on that subject was rejected. We are unable, therefore, to perceive any legal objection to the award so far as relates to the principal sum found due as additional compensation.

As to the interest. The arbitrators found in favor of the contractor for interest upon the increased cost from the date that the whole work was finally completed and accepted. The relator claims that the question of the propriety of the allowance of interest is not open to discussion, citing numerous cases, and among others Matter of Wilkins, 169 N. Y. 494, 62 N. E. 575, in which it was said:

"Where the merits of a controversy are referred to an arbitrator selected by the parties, his determination, either as to the law or the facts, is final and conclusive, and a court will not open an award unless perverse misconstruction or positive misconduct upon the part of the arbitrator is plainly established, or there is some provision in the agreement of submission authorizing it. The award of an arbitrator cannot be set aside for mere errors of judgment, either as to the law or as to the facts. If he keeps within his jurisdiction, and is not guilty of fraud, corruption or other misconduct affecting his award, it is unassailable, operates as a final and conclusive judgment, and, however disappointing it may be, the parties must abide by it."

The Commission claims, on the other hand, that it is entitled to question the award of interest because it appears on the face of the award that the arbitrators intended to be guided by legal principles in including interest in the award, and therefore that their award on this subject is open to review. It is not entirely clear that the arbitrators included interest in their award only because they understood that interest was allowable as a matter of law, but, even if they did, we are of opinion that the award can be sustained upon legal principles.

[3] In the first place, we are of opinion that the question of interest, although not mentioned in the submission, was included in it. In Matter of Burke, 117 App. Div. 477, 102 N. Y. Supp. 785, affirmed 191 N. Y. 437, 84 N. E. 405, the submission was general of all matters of difference and dispute between a building contractor and the owner of the building, but interest was not specifically mentioned. This court said:

"The appellant insists, first, that the matter of interest was not within the submission of arbitration, and, second, that the nature of the claims between the two parties was such that as matter of law interest could not be allowed. The question whether either party should have interest on any sum which might be due him from the other was clearly within the terms of the submission of arbitration. All manner of claims and demands were submitted. It is not necessary there should be any agreement for interest in order to permit a party to recover it. Whenever a debtor is in default for not paying money, in pursuance of his contract, he is chargeable with interest from the time of

his default on the specified amount of money which should have been paid. * * * It was not necessary in the agreement of arbitration, therefore, to specify whether or not interest should be allowed, for interest followed as matter of law the determination that a certain sum known to the party obligated was due and payable to the other on a particular day. The question as to whether interest should have been allowed under any given state of facts was properly before the arbitrator and within the submission to arbitration."

As to the legal right to an allowance of interest, it may be said, as was said by Judge Gray in Carricarti v. Blanco, 121 N. Y. 230, 24 N. E. 284:

"It must be conceded that this question of the allowance of interest is not one which may be said to be free from difficulty when considered in relation to unliquidated demands."

[4] It is sometimes said that interest cannot be allowed upon unliquidated claims, but this is not always strictly accurate. It depends upon whether the amount due can be ascertained by the debtor by computation or means accessible to him when the demand is made. Degnon-McLean Company v. City Trust Company, 99 App. Div. 195, 90 N. Y. Supp. 1029, affirmed 184 N. Y. 544, 76 N. E. 1093, was a case wherein a plaintiff sued to recover the extra cost of work caused by the failure of a contractor for whom the defendant was responsible to do work as agreed. The court said:

"Finally, it is claimed that interest was improperly added to the verdict. During the course of the trial the question was presented as to whether the plaintiff, in case it had a recovery, ws entitled to interest upon the damages sustained, and it was arranged between counsel that such question should be determined by the learned trial justice after a verdict had been rendered. He held that the plaintiff was entitled to interest, and the same was added to the verdict. The interest was properly allowed. It is true that the damages recovered in one sense were unliquidated, but this did not prevent the allowance of interest, inasmuch as means were accessible to the defendant, at the time the demand was made upon it to pay, to ascertain by computation the amount to which the plaintiff was entitled. The general rule is that, even though damages are unliquidated, this does not deprive a party of interest if there are, at the time the demand is made for payment, means accessible to the party sought to be charged of ascertaining by computation or otherwise the amount to which the other party is entitled. * * *"

To the same effect are White v. Miller, 78 N. Y. 393, 34 Am. Rep. 544; Carricarti v. Blanco, supra; Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101; Van Renssalaer v. Jewett, 2 N. Y. 135, 51 Am. Dec. 275.

[5] There is nothing in the case to suggest that the Commission, with the aid of their engineering staff, could not easily have ascertained the excess of cost of one kind of work over another. We are therefore of the opinion that interest was properly allowed, first, because it was within the scope of the submission, and, secondly, because the claim is of such a nature that interest was properly allowable from the date of the demand.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion for a mandamus granted, with $50 costs. All concur.