OSCAR DANIELS COMPANY, Appellant, v. THE CITY OF NEW YORK, Respondent.

First Department, May 27, 1921.

Municipal corporations — contract for construction of subway construed — acceptance of part of final payment does not release city — provision that certificate of engineer as to construction of contract shall be final does not prevent courts from construing contract — underpinning walls of buildings along line of construction — payment by lineal foot — contractor entitled to measure along line of front wall and not along building line — not entitled to pay for underpinning veranda and stoop walls — contractor bound by engineer's classification of steel — exposed surface only of grating to be paid for.

The plaintiff, by accepting a part of the final payment certified by the defendant's engineer for the construction of a subway, did not release the defendant from any further claim.

The provision in a contract for the construction of a subway that the certificate of the defendant's engineer with respect to the construction of the contract should be final and conclusive did not bind the parties as to points of law, and, notwithstanding such a certificate, the court will construe the contract and afford relief where the engineer has given an erroneous construction thereof.

Under the provision in the contract that there should be paid to the plaintiff a certain sum per lineal front foot of buildings on the street where it was necessary to construct underpinning to maintain the walls, the plaintiff was entitled to payment at the unit basis per foot measured along the line of the front wall of the buildings required to be underpinned by it and was not limited by the length of the building line.

The plaintiff was not entitled to recover for underpinning any wall which did not constitute the front wall of a building or the support thereof at a point where there may not have been a front wall proper, and so, *it seems*, that it was not entitled to recover for underpinning veranda and stoop walls.

There being no evidence of fraud or bad faith on the part of an engineer, his determination and certificate are final with respect to the quality of material offered for use by a contractor and with respect to the quantity and classification of material as the basis for computing the amount to which the contractor is entitled, and so, the plaintiff was bound by the classification of steel made by defendant's engineer.

In determining the charge which the plaintiff might recover for ventilation gratings, the exposed surfaces only of the gratings in place are to be considered, and the flanges on the outer edges thereof which are covered with cement are not a part of the gratings for which payment must be made.

APPEAL by the plaintiff, Oscar Daniels Company, from so much of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 4th day of January, 1919, upon the dismissal of the complaint in part by direction of the court at the close of the plaintiff's case, and upon the verdict of a jury in part in its favor, and also from an order entered in said clerk's office on the 7th day of January, 1919, denying plaintiff's motion to set aside the direction dismissing the complaint in part and to set aside the verdict of the jury as to certain items, made upon the minutes.

*Robert H. Elder* [*Otho S. Bowling* of counsel], for the appellant.

*Elliot S. Benedict* [*John F. O'Brien* of counsel; *John P. O'Brien, Corporation Counsel*], for the respondent.

LAUGHLIN, J.:

The action is for an alleged balance due and owing to the plaintiff for work, labor and services performed and materials furnished under a contract made between the plaintiff and defendant on the 13th of September, 1911, for the construction of section No. 12 of route No. 5 of the Lexington avenue subway from a point 70 feet south of One Hundred and Sixth street to a point 115 feet south of One Hundred and Fifteenth street. It is not disputed that the contractor fully performed the contract. The points in controversy do not, as is often the case, relate to work required to be done or materials required to be furnished which the contractor claimed it was not obligated by the contract to perform or furnish (See *People ex rel. Cranford Co.* v. *Willcox,* 153 App. Div. 759; affd., 207 N. Y. 743), but solely to the amount to which the plaintiff was entitled according to the provisions of the contract which prescribed that payment should be made according to specified unit bases. The points upon which we are asked to review the trial and reverse the judgment relate to the construction of the contract with respect to the measurements of underpinning and of gratings furnished and installed under the curbing by the contractor, and to the classification of steel. The plaintiff recovered a verdict for $8,937.49 and $639.42 interest thereon for certain items, and since the city did not appeal, no point is presented with respect to them.

First Department, May, 1921.        [Vol. 196

On the completion of the work the engineer made a final certificate in accordance with the provisions of the contract showing a balance of $72,760.16 due and owing to the contractor. The comptroller, however, instead of issuing to the contractor a warrant for that amount issued a warrant for $71,000 " for and on account of final payment on contract," leaving a balance of $1,760.16 which was not paid but was included in the plaintiff's recovery; and the contractor thereupon executed a general release to the city of its liability under the contract containing a reservation of its claim for the balance certified by the engineer and of a claim which he had filed in the department of finance on August 8, 1916, for $197,641.43. The release provides that said claims are neither released by the contractor nor conceded by the city.

Article XXXV of the contract provided that the acceptance of final payment by the contractor should be and operate as a release of the city from all claims and liability to the contractor, with the exception of any claim it might have for moneys withheld under the provisions of the contract. Counsel for the city contends that this acceptance by the contractor of part of the final payment released the city from all claims involved in this appeal. He contends (citing *Hearst* v. *McClellan*, 102 App. Div. 336) that the comptroller was merely an auditing officer and that it was his duty to pay the full amount specified in the final certificate of the engineer, and that notwithstanding his failure so to do the payment of $71,000 made to and accepted by the contractor constitutes a final payment under the certificate, and he cites as authority therefor *MacArthur Bros. Co.* v. *City of New York* (177 App. Div. 725; affd., 224 N. Y. 629). In that case, however, there was payment in full to the contractor according to the final certificate, and it was merely held that where the contractor accepts the final payment as in full, he cannot by a release, the execution of which is neither required by law nor by the contract, reserve a claim. We are of opinion, therefore, that the acceptance of *part* of the final payment did not release the city.

Article X of the contract provided as follows:

" Article X.  In order to construct the Railroad it will be necessary to take up and relay the sidewalk pavement

or other surface material, and to lay and maintain a temporary pavement in the roadway, to protect, support and maintain during construction all buildings and other structures, including their foundations, and all elevated and surface and sub-surface railroads, watermains, gas pipes, electric subways, poles and wires, pneumatic tubes, steam pipes, vaults, including vaults of abutting property, and other surface, sub-surface and overhead structures, together with their necessary connections, as the same may be met with along the route; to build sewers both along the route and other streets; to make or remake the necessary manholes, catch basins and other sewer connections therewith; to move, alter, readjust or rebuild water mains, gas pipes, electric subways, pneumatic tubes, steam pipes, vaults, including vaults of abutting property, and other sub-surface structures, together with their necessary connections; and to do all such additional and incidental work as may be necessary for the completion of the Railroad and the reconstruction and restoration of the street pavements or other surfaces (except as herein provided in respect of temporary pavements for roadways), adjacent to the route of the Railroad and which may have been directly or indirectly disturbed or injured by the Contractor in the progress of the work of construction, to as useful and good a condition as existed before construction shall have been begun. All such work of every description including underpinning wherever necessary, of all buildings or structures of whatsoever nature, monuments, elevated railroads and surface and sub-surface railroads affected by or interfered with during the construction of the Railroad, is part of the work which is included in this contract and which the Contractor agrees to perform for the prices herein agreed upon."

Section 84 of the specifications provided that in order to secure adjacent ground or the buildings thereon, " or to prevent bringing an unusual pressure on the structure when completed, the Contractor shall secure the sides of the excavation by suitable timbering, and shall safely and permanently underpin adjacent buildings." The unit prices to be received by the contractor were specified in a schedule contained in article XI of the contract. Its compensation for underpinning work

First Department, May, 1921.          [Vol. 196

was prescribed in item 4 of the schedule, which provides as follows:

"Item 4. For underpinning buildings, including all incidental work and material, as follows:

"(a) For buildings less than seven (7) stories in height the sum of Eighty-two and 50/100 dollars ($82 50/100) per lineal front foot of building underpinned."

That schedule also prescribed compensation for the restoration of "street surface;" and with reference to "surface and sub-surface structures" it prescribed compensation for the support, reconstruction and rebuilding of electric and horse railways. It also provided for compensation for changing the location of and relaying or reconstructing "in other than the original position" water, gas, steam and other pipes.

Article XVIII recites that the contractor has examined the work and has read and understands the specifications. By article XXXVIII the contractor stipulated that it could do the work without damage to the foundations, walls or other parts of adjacent buildings and structures, and that it would be responsible for any damage thereto. Section 70 of the specifications obligated the contractor to maintain, to the reasonable satisfaction of the owners, all surface and sub-surface structures and to protect them from injury, and if injured, to restore them without other compensation than that expressly provided for in the contract. Section 86 of the specifications provided that where the underpinning of a building became necessary as provided in section 84 the contractor would be paid therefor as provided in item 4 of the schedule of unit prices hereinbefore quoted. Section 89 of the specifications provided that the cost of removal, where necessary, of walls or other parts of vaults of abutting property "within the ordered net lines of excavation is to be included in earth excavation as provided in section No. 102, but the restoration of all such walls or other parts of vaults within the ordered net lines of excavation will be paid for at the unit prices specified in the schedule applicable to the several classes of work and material involved in such restoration," but that this was not to be construed as applicable to any work beyond the ordered net lines of excavation and that such work should be at the contractor's own cost and expense.

Section 107 of the specifications provided, among other things, that the prices stipulated for excavation in items, 1, 2 and 3 of the schedule are to include the cost " of the maintenance, support, etc., of all surface and subsurface structures of whatever nature, payment for the maintenance and support of which is not herein elsewhere specifically provided for."

Lexington avenue is seventy-five feet in width and the subway occupies only sixty feet in width thereof, leaving seven and one-half feet of street on either side. Owing to the fact that the contractor was required to support the front walls of the buildings it excavated the entire width of the street. It appears that there were many bay windows, stoops and verandas extending into the avenue beyond the building line, supported by walls which it became necessary for the contractor to underpin in order properly to support them. The engineer construed the contract as entitling the contractor to compensation for that work only on the basis of the lineal measurement on a straight line of the actual width of the buildings. The plaintiff insisted that the measurement should be made along the front line of the walls, and on account of the difference in these measurements the contractor claimed to be entitled to recover $133,901.62. It was not expressly shown whether or not there were *front walls* of the buildings back of the bay window walls or back of the walls supporting the stoops and verandas; but from the photographs in the record it is a reasonable inference that the bay window walls constituted the front walls of the buildings at those points, and on the other hand it would seem that there were front walls of the buildings proper back of the walls supporting the stoops and verandas. Counsel for the city contends that the certificate of the engineer with respect to the construction of the contract on this point is conclusive. The provisions of the contract with respect to that certificate are in the same form as that which has frequently been before the courts. They are contained in articles XXIV and XXV of the contract and are as follows:

" Article XXIV. To prevent disputes and litigations, the Engineer shall in all cases determine the amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract; shall

determine all questions in relation to the works and the construction thereof, and shall in all cases determine every question which may arise relative to the fulfillment of this contract on the part of the Contractor. His determination and estimate shall be final and conclusive upon the Contractor and in case any question shall arise between the parties hereto, touching this contract, such determination and estimate shall be a condition precedent to the right of the Contractor to receive any money under this contract.

" Article XXV. The Engineer shall make all necessary explanations as to the meaning and intention of the specifications, shall give all orders and directions contemplated therein or thereby and in every case in which a difficult or unforeseen condition shall arise in the performance of the work required by this contract."

There was no evidence or claim that the engineer was guilty of fraud or bad faith. The sole claim is that he misconstrued the contract with respect to its requirements concerning the measurements for underpinning. The city relies on *Merrill-Ruckgaber Co.* v. *United States* (241 U. S. 387), which appears to hold that in such case the parties have made the engineer the arbitrator not only with respect to the facts but with respect to the construction of the contract, at least with respect to ambiguities giving rise to a dispute between the parties. This, however, is not a Federal question and we need not decide what the rule in the Federal courts is for we are not bound thereby. Our courts refuse to hold that the parties are concluded on a point of law by this agreement and by such a certificate thereunder, and on the contrary, in line with our rule of public policy which invalidates agreements ousting the courts of jurisdiction over controversies arising under contracts and submitting all of their rights and liabilities to arbitration for final adjudication (*Meacham* v. *Jamestown, F. & C. R. R. Co.,* 211 N. Y. 346), we hold that the engineer's construction of a contract, if erroneous, does not bind the parties and that notwithstanding such a certificate, the court will construe the contract and afford relief where the engineer has given an erroneous construction thereto. (*Burke* v. *Mayor,* 7 App. Div. 128; *Merrill-Ruckgaber Co.* v. *City of New York,* 160 id. 513, 515; *Uvalde Contracting Co.* v. *City of New York,* Id. 284, 287;

*Croton Falls Construction Co.* v. *City of New York*, 168 id. 261, 270.) *Faber* v. *City of New York* (222 N. Y. 255) is cited as holding the contrary; but the point was not presented for decision and the observation by the court upon which the city relies was made merely by way of argument. We are of opinion that the contractor was entitled to payment at the unit basis per foot measured along the line of the front wall of the buildings, as required to be and as underpinned by it. The trial court dismissed the plaintiff's entire claim for underpinning not allowed by the certificate of the engineer. As already observed, it is reasonably to be inferred from the evidence that the front wall of the buildings at many points departed from a straight line forming and constituting the building line and extended under the bay windows several feet beyond such line. We deem it plain that the contractor was entitled to the additional measurements of such walls over the measurements for which it was allowed. This error necessitates a reversal and it being an action at law on a single cause of action there can be only one recovery and judgment and there must be a reversal of the judgment *in toto* and a new trial unless the parties stipulate for a severance of the issues or for a settlement on the basis of this opinion.

Other points have been argued, which necessarily will arise if there be a new trial, and, therefore, it is proper that we should express an opinion with respect thereto. We think that the contractor is not entitled to recover for underpinning any wall which did not constitute the front wall of a building or the support thereof at a point where there may not have been a front wall proper. It would seem, therefore, although as already observed, the evidence is not clear on the point, that the plaintiff is not entitled to recover for underpinning veranda and stoop walls, for the photographs indicate that those walls did not constitute the front walls of the buildings proper or the support of those walls at points where there may not have been a front wall proper; but owing to the indefiniteness of the evidence, we do not intend by this expression of an opinion to preclude the trial court from ruling otherwise upon a more full presentation of material evidence.

Another controverted point arises on the classification of the steel by the engineer. Item 19 of the schedule of unit

First Department, May, 1921.                    [Vol. 196

prices provides that the contractor shall receive " For riveted steel, painted and erected," seventy-four dollars per ton; and item 20 provides that it shall receive " For steel beams and shapes with connection, painted and erected," seventy dollars per ton. The engineer classified steel beams with milled ends, as required by section 259 of the contract, of the weight of 4,931,497 pounds, and beams with holes for field rivets drilled to an iron template, as required by section 225 of the contract, of the weight of 122,050 pounds, as falling within the classification for which the contractor was to receive only seventy dollars per ton. Plaintiff claims that this steel fell within the other classification and that it is entitled to receive therefor seventy-four dollars per ton. This description of the two classifications of steel was adopted for the first subway contract and has been used in all subway contracts. The evidence on which plaintiff claims that the classification by the engineer was erroneous is not directed to the true classification according to the provisions of this schedule of unit prices; but tends to show that such classification is indefinite and is unknown to the trade, and an attempt is made on the testimony of experts to reclassify the steel according to their understanding with respect to the description of the different kinds of steel used in this work. As usual, the testimony of the experts is conflicting. They gave opinions both inconsistent with and sustaining the classification of the engineer. There being no evidence of fraud or bad faith on the part of the engineer, we are of opinion that in the circumstances the contractor is bound by his classification of the steel. Although a contractor is not concluded by an erroneous construction placed on the contract by the engineer, it is well settled that in the absence of fraud or bad faith the determination of the engineer and his certificate are final with respect to the quality of material offered for use by the contractor and with respect to the quantity and *classification of material* as the basis for computing the amount to which the contractor is entitled. (*Whiteman* v. *Mayor, etc.,* 21 Hun, 117; *Sweet* v. *Morrison,* 116 N. Y. 19; *Neidlinger* v. *Onward Const. Co.,* 107 App. Div. 398; affd., 188 N Y. 572; *Allen* v. *City of Oneida,* 210 id. 496; *United States* v. *Cooke,* 207 Fed. Rep. 682; *Cook* v. *Foley,* 152 id. 41.) The court left it to the jury to determine whether the engineer

properly classified the steel and the appellant complains of the verdict which is adverse to him thereon.  We think the court might have ruled against the plaintiff on this point as matter of law.

Appellant also complained of the verdict of the jury sustaining the engineer's measurements for gratings.  Section 473 of the contract provides as follows:

"Section No. 473. *Gratings will be measured to the lines as constructed and payment* therefor will be made as herein provided in Schedule Item 28, which price shall include the grating in place in the work, all frames and framing, and all incidental work."

"Item 28. For steel gratings, for ventilation, in place, including frames, etc., the sum of One and 50/100 dollars (*$1.50/100 per square foot.*"

It is conceded that the engineer allowed for the full measurements of the exposed surfaces of the gratings in place;  but it is claimed that he should have allowed also for the measurements of that part of the frames, in the form of flanges, which extended out from the gratings and were covered by cement to hold the frames in which the gratings were inserted.  The parts of the frames in the form of flanges, for which the contractor claims measurement, were not exposed when the gratings were installed and the work was completed and were some inches back from the exposed surface and completely covered with cement.  With respect to that item we think the contractor was only entitled to the measurements of the exposed surfaces when the work was completed and that the court might have so ruled as matter of law, for the provisions of the contract are not ambiguous and there was no occasion for parol evidence to aid in their construction.  It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.   Settle order on notice.